Jane Elois **HAMILL**, Appellant,

v.

Gloriadine **BRASHEAR** et al., Appellees
(in the Estate of Lena Hamill,
Deceased).

No. 8430.

Court of Civil Appeals of Texas,
Amarillo.

July 15, 1974.

Second Rehearing Denied Aug. 22, 1974.

Bowers & Cotten, Forrest Bowers, Lubbock, for appellant.

Crenshaw, Dupree & Milam, James H. Milam, Lubbock, Kiser & Hook, Frank B. Kiser, Jr., Warren G. Tabor, Levelland, for appellees.

## ON MOTION FOR REHEARING

ELLIS, Chief Justice.

Our opinion issued on May 28, 1974, is withdrawn, and the following opinion, issued subsequently to appellant's motion for rehearing, and amendment thereto, is substituted therefor:

Will contestant, Jane Elois Hamill, has brought this appeal from a take-nothing judgment entered by the District Court of Hockley County, Texas, in which the Last Will and Testament of Lena Hamill, deceased, together with the First and Second Codicils thereto, were admitted to probate. Affirmed.

The Last Will and Testament of Lena Hamill, deceased, together with the two codicils, were admitted to probate by the County Court of Hockley County, Texas, on June 14, 1969. Plaintiff, Jane Elois Hamill, granddaughter of the deceased, appealed the decision of the County Court to the District Court by means of a Writ of Certiorari naming, as defendants, Gloriadine Brashear and Betty Jo Mowry, daughters of the deceased; Carol Jean Brashear Hadaway, granddaughter of the deceased; Elois Hamill Reese, guardian of the estate of minor children, Sue Elizabeth and Robert A. Hamill, grandchildren of the deceased; and Ben F. Robinson and Norton A. Baker, Temporary Administrators of the Estate of Lena Hamill, deceased. The contestant's basic contention in these proceedings is that Lena Hamill, testatrix, was not of disposing mind and memory at the time of the execution of the will and codicils, and thus the order of the county court admitting such will and codicils to probate should be set aside.

Ben F. Robinson and Norton A. Baker, named as independent co-executors in the will and appointed temporary administrators of the estate, resigned as temporary administrators and were discharged by the probate court. They were succeeded by the First National Bank of Levelland as the temporary administrator. Robinson and Baker were not named in the order granting certiorari as defendants in their capacity as executors named in the will. Since the various cases filed in connection with this action were ordered to be consolidated for purposes of trial, the defendants will sometimes be referred to as "appellee."

The case was tried de novo before a jury in the district court. The court overruled the defendants' motions for instructed verdict after plaintiff had rested and at the conclusion of all the testimony, and submitted the case to the jury on three special issues. The special issues submitted to the jury inquiring as to whether Lena Hamill did not have testamentary capacity at the time of the execution of the will and the two codicils were each answered "She did have testamentary capacity." Judgment was entered by the district court for the defendants, and it was ordered that the will and codicils be admitted to probate and that such judgment be certified to the Probate Court of Hockley County for observance.

The contestant has brought this appeal on five points of error. Proponents of the will complain by cross-points that the trial

court erred in not instructing a verdict in their favor after plaintiff had rested and upon the conclusion of all the evidence.

■ By point number one, appellant contends that the trial court erred in failing to appoint a guardian ad litem for the minor parties to the suit, Sue Elizabeth Hamill and Robert Arthur Hamill. Section 376 of the Texas Probate Code, V.A. T.S. provides that when minors who are entitled to a portion of an estate have no guardian or have a guardian with an interest in the estate, the court shall appoint a guardian ad litem to represent them. Rule 173, Texas Rules of Civil Procedure, provides that when a minor may be a defendant to a suit or a party to a suit either as plaintiff, defendant or intervenor and is represented by a next friend or guardian who appears to the court to have an interest adverse to such minor, the court shall appoint a guardian ad litem for such person.

In this case, both minors are represented by Elois Hamill Reese, "not in her individual capacity, but as mother, natural guardian, next friend, and the duly appointed, qualified and acting guardian" of their estate, and she, acting in such capacity, was named as defendant in this action. The plaintiff-contestant, Jane Elois Hamill, is the sister of the minors. The original suit was instituted by Elois Hamill Reese on behalf of her daughter Jane Elois Hamill, a minor at that time; however, when Jane Elois Hamill reached her majority, she remained as the sole contesting party. Elois Hamill Reese, the guardian, was not a named beneficiary under the will, nor would she take under the laws of intestacy in the event the will should be set aside. She filed a waiver of issuance, service and return of citation and entered appearance in her capacity as guardian of the minors. The minors are named beneficiaries in the will and thus would take under the will if it is probated. Also, they would share in the estate by the laws of descent and distribution in the event the will should not

be admitted to probate. Since the will contains a no contest provision, the only circumstance under which the minors would not receive some beneficial interest in the estate would be that of their actively contesting the will as parties plaintiff and failing to prevail in such contest.

■ The rule as cited and relied upon by appellant is stated in the case of Missouri-Kansas-Texas R. Co. of Texas v. Pluto, 138 Tex. 1, 156 S.W.2d 265 (Tex. Comm'n App.1941, opinion adopted) : "(W)here the interest of the minor and those of the next friend conflict, the next friend is not a competent person to represent the minor." However, in that case, the father, acting as next friend of his minor son, agreed upon a lump sum settlement for his injuries and those of his son. The father would himself receive a portion of the settlement to the detriment of the son. In the instant case, the guardian will not gain anything in either event, whether the will is set aside or is admitted to probate. Therefore, in our opinion, the interest of the guardian, Elois Hamill Reese, is not so in conflict with, or so adverse to those of her wards as to render her incompetent to represent them in this proceeding. Rule 173, T.R.C.P., and § 376 of the Probate Code, both contemplate that if a guardian is representing the minors, there is no need to appoint a guardian ad litem unless the interest of the guardian is in conflict with or adverse to those of the minors. Jones v. Martin, 481 S.W.2d 467 (Tex.Civ.App.—Texarkana 1972, no writ).

In the case of Ladehoff v. Ladehoff, 436 S.W.2d 334 (Tex.1968), the court pointed out that Rule 173 contemplated the appointment of a guardian ad litem for minors, in *in personam* actions, and that Section 376 of the Probate Code is related to proceedings for partition and distribution of estate and is no authority for appointment of a guardian ad litem upon application for the original probate of a will produced in court. In the case of Henderson v. Applegate, 203 S.W.2d 548 (Tex.Civ.

App.—Fort Worth 1947, writ ref'd n. r. e.), cited by appellant, the court, considering the matter of appointment of a guardian ad litem, regarded a minor in the sense of being a "defendant" in a situation wherein the minor was in the position of making satisfaction for a wrong complained of by another, and, in this connection, significantly stated:

".  .  . We know of no law in this state authorizing the appointment of a guardian ad litem in matters of a purely probate nature."

Accordingly, we hold that the trial court did not err in failing to appoint a guardian ad litem, and appellant's first point of error is overruled.

■ Appellant complains, by point number two, that the trial court erred by rendering judgment admitting the will and codicils to probate on the grounds that there was no evidence that Lena Hamill ever read or understood the terms of such will and codicils. The will and codicils were admitted to probate by the probate court and in this action the contestant seeks to set aside such order admitting them to probate by attacking their validity on the grounds of testamentary incapacity of Mrs. Hamill. The proponents who offered the will for probate originally assumed the burden of complying with all legal formalities and of establishing the necessary prerequisites for its validity. The burden rests upon those who wish to set aside a will duly probated to establish by a preponderance of the evidence the ground or grounds upon which they rely. Lee v. Lee, 424 S.W.2d 609 (Tex.1968); Jowers v. Smith, 237 S.W.2d 805 (Tex.Civ.App.— Amarillo 1950, no writ). In this case, appellant did not tender or request an issue inquiring as to whether Lena Hamill read or understood the terms of the will and codicils, and it is our opinion that the evidence does not establish as a matter of law that she did not read or understand such will and codicils; therefore, such matter must be considered waived and deemed to

have been found in support of the judgment. Rule 279, T.R.C.P.; Arnold D. Kamen & Co. v. Young, 466 S.W.2d 381 (Tex.Civ.App.—Dallas 1971, writ ref'd n. r. e.); M. J. Delaney Company v. Murchison, 393 S.W.2d 705 (Tex.Civ.App.—Tyler 1965, no writ). Appellant's second point is overruled.

Appellee contends, by cross-points, that the plaintiff failed to meet her burden of proof as to the lack of testamentary capacity on the part of the testatrix on the occasions in question. At the conclusion of plaintiff's testimony, defendants' attorney moved for an instructed verdict on the ground that plaintiff had failed to raise a fact issue of lack of testamentary capacity of the testatrix on the dates of her execution of the will and the two codicils. In the first cross-point appellee contends that the court erred in overruling the defendants' motion for instructed verdict after the plaintiff had rested. After the motion was overruled, the defendants then presented the testimony of various witnesses seeking to sustain the appellee's contention that the testatrix had testamentary capacity at the time of her execution of the will and codicils in question. Among the appellee's witnesses were Norton Baker, the attorney who drew the will and codicils and a co-executor named in the will, Ben Robinson, a co-executor named in the will, and Harold Mowry, the husband of one of the devisees under the will, along with a doctor who had treated the testatrix for some time, her banker and certain business associates. At the conclusion of all the evidence, the defendants again moved for an instructed verdict, and in the second counter-point contend that the court erred in overruling such motion on the ground that no fact issue as to testamentary incapacity had been raised by the evidence. As previously stated, the cause was submitted to the jury who found that the testatrix had testamentary capacity on each occasion in question and judgment was accordingly entered in favor of the appellee. In appellant's third, fourth and fifth points

of error, she contends that the testimony concerning transactions with the deceased by Norton Baker and Ben Robinson, the co-executors named in the will, and Harold Mowry, husband of one of the devisees, was prohibited by Article 3716, Vernon's Ann.Tex.Stat., commonly known as the Dead Man's Statute, and that the trial court erred in admitting such testimony.

■ In connection with our consideration of appellee's cross-points, it must be recognized at the outset that the contestant is required to assume the burden of proof on the issue of lack of testamentary capacity and therefore it was incumbent upon her to raise an issue for jury determination. The appellant sought to meet her burden of proof on the matter of testamentary incapacity and to raise an issue for jury determination prior to resting her case by calling five lay witnesses to testify as to their association with the deceased, Lena Hamill.

■■ The proper inquiry in a will contest on the ground of lack of testamentary capacity is the condition of the testatrix's mind on the day the will and codicils were executed. In this case, plaintiff introduced no evidence that the testatrix lacked testamentary capacity on February 16, 1968, the date of execution of the will; on February 29, 1968, the date of execution of the first codicil; or on March 8, 1968, the date of execution of the second codicil. However, testatrix's mental condition at those times may be determined from lay opinion testimony based upon the witness' observations of testatrix's conduct either prior or subsequent to the respective execution dates. The evidence of incompetency at other times has probative value only when it demonstrates that the condition existed at the time of execution. Lee v. Lee, supra.

Lena Hamill was the wife of T. A. Hamill, who died in 1957. There were three children born of the marriage, Robert Hamill, Betty Jo Mowry, and Gloriadine Brashear. Robert Hamill and wife, Elois, had three children: Jane Elois, Sue

Elizabeth, and Robert. Gloriadine Brashear and husband, Clive Brashear, had one child, Carol Jean Brashear. Robert Hamill died in 1956, and the two remaining children of Lena Hamill and the four grandchildren are the named beneficiaries under her will and codicils and her only heirs at law. During the life of T. A. Hamill, a substantial estate had been accumulated which passed by will to Lena Hamill. Four of the five witnesses called by plaintiff testified that Lena Hamill carried on her business and managed that estate until her death in 1969. It was established that Lena Hamill was 72 years old and had been under treatment of a doctor for various illnesses, such as diabetes, arteriosclerosis, and kidney trouble. Also, there was testimony to the effect that Lena Hamill would sometimes interrupt conversations, monopolize conversations, and change the subject of conversations. She was very upset over the death of her only son and the remarriage of her daughter-in-law, Robert's wife. An incident was related whereby Lena Hamill thought she had lost or someone had stolen $200 from her purse while attending a social function and later found that she had mislaid the money at her home. However, this incident happened five or six years before the execution of the original will.

■ Testamentary capacity is generally defined as the ability to know and understand the business in which the testatrix is engaged, the effect of the action of making the will, the capacity to know the objects of her bounty, and the claims upon her and the general nature and extent of her property. Miller v. Flyr, 447 S.W.2d 195 (Tex.Civ.App.—Amarillo 1969, writ ref'd n. r. e.). The rule is that less mental capacity is required to enable a testator to make a will than for the same person to make a contract. Rudersdorf v. Bowers, 112 S.W.2d 784 (Tex.Civ.App.—Galveston 1937, writ dism'd) and authorities cited therein.

None of the witnesses called by plaintiff could relate the activities or conduct of

Lena Hamill to the dates of execution of the will or codicils. Ruth Evelyn and R. W. McVay, acquaintances since 1954, saw Lena Hamill socially on various occasions and about once a month through their association with the Eastern Star. Virginia Davis, a sister of Elois Reese, the former wife of Robert Hamill, deceased, testified that she thought that Lena Hamill was of unsound mind in 1968, and she based that opinion upon conversations she had had with Mrs. Hamill. She stated that sometimes her conversations were normal and sometimes they were not, and that she "could not put her finger on anything definite" nor could she remember the dates or circumstances surrounding the execution of the will or codicils.

Elois Reese, former wife of Robert Hamill, deceased, had not seen Lena Hamill since her marriage to Payton Reese in 1967. Clive Brashear, a son-in-law of the testatrix and husband of Gloriadine Brashear, testified that he moved from Levelland in 1954 and saw Mrs. Hamill four or five times a year from that time until her death. Brashear testified further that he was of the opinion that Mrs. Hamill would take small items from his home and that later some of those items were found in her home.

The fact that she lived alone, took care of her business, made oil and gas leases, rented her property and collected the rents up to the time of her death is well established by the testimony of the witnesses called by the plaintiff prior to resting her case. It is not questioned that the will named all of Lena Hamill's heirs at law and it disposed of all her property.

■■ It is our opinion that the observations by the lay witnesses called by plaintiff were not sufficient upon which to base their opinions that Lena Hamill was of unsound mind at the times in question and thus are without probative value. See Miller v. Flyr, supra; Jowers v. Smith, supra. It is fundamental that a finding of testamentary incapacity cannot rest upon

evidence amounting to little more than suspicion or surmise of testamentary incapacity. Cruz v. Prado, 239 S.W.2d 650 (Tex.Civ.App.—San Antonio 1951, no writ).

■ It is well established that the primary and fundamental tests of testamentary capacity include the knowledge of the testator as to his property and the natural objects of his bounty. From a review of the record we found no evidence of probative weight that Mrs. Hamill did not know fully and completely her property and the natural objects of her bounty (i. e., her two living daughters and four grandchildren), and it was admitted by plaintiff's witnesses that the will and codicils fully and completely detail all of her property, and that her daughters and grandchildren were named in her will. Further, under the evidence presented by the plaintiff, it is our opinion that no finding of testamentary incapacity could be sustained, for the evidence tending to support such conclusion rests solely upon surmise and conjecture which in legal effect is no evidence. Seideneck v. Cal Bayreuther Associates, 451 S.W.2d 752 (Tex.1970); Cruz v. Prado, supra. In view of the foregoing, we hold that the testimony of plaintiff's witnesses constitutes no evidence of probative weight that Mrs. Hamill lacked testamentary capacity on the occasions in question, and that in the light of the applicable authorities, no issue as to the vital fact of testamentary capacity was raised for jury determination by the testimony of such witnesses.

After presenting the testimony hereinabove discussed, the plaintiff rested her case, whereupon the defendants moved for an instructed verdict on the grounds that plaintiff wholly failed to meet her burden of proof to establish lack of testamentary capacity of the testatrix, and that there was no evidence of probative force which would support a jury finding that the testatrix did not have testamentary capacity on the date of her execution of the will

and codicils. The trial court overruled the motion, and the defendants proceeded to introduce the testimony of their various witnesses who gave testimony concerning their relationship with Mrs. Hamill.

It is generally recognized that if a defendant's motion for instructed verdict has been overruled at the time the plaintiff has rested his case, the defendant must elect whether he will stand on his motion or proceed with the introduction of his evidence. If he then proceeds with the introduction of his evidence, "he waives his motion, and, if thereafter the evidence from all sources when finally concluded is sufficient to raise an issue of fact, the case must be submitted to the jury." Citizens' Mut. Life Ins. Ass'n v. Miles, 77 S.W.2d 717 (Tex.Civ.App.—Waco 1934, no writ). In determining whether there is a fact issue for the jury, the court must consider all of the evidence presented during the trial, including that which was presented after the defendant's motion for instructed verdict at the conclusion of the plaintiff's case, and *if* the evidence from *all* sources is sufficient to raise a fact issue, the movant cannot contend that the trial court should have sustained his motion. Texas Construction Rentals, Inc. v. Harrison, 410 S.W.2d 482 (Tex.Civ.App.—Waco 1966, writ ref'd n. r. e.). In this connection, "(T)he question of whether the evidence raises the issue of plaintiff's right to recover must be determined from the evidence as a whole, and not confined to the evidence offered by the plaintiff before resting his case." Galveston, H. & S. A. Ry. Co. v. Brewer, 4 S.W.2d 320 (Tex. Civ.App.—Galveston 1928, writ ref'd). Thus, when the movant offers evidence after denial of his motion for instructed verdict at the time the plaintiff rested, he thereby waives his earlier motion, and when he later moves for instructed verdict, "the new motion is determined by all of the evidence regardless of by whom offered." 3 McDonald Texas Civil Practice § 11.26, pp. 227–228 (1970).

In determining whether the plaintiff has met her burden of proving the testamentary incapacity of the testatrix on the occasions in question, or whether a fact issue has been raised regarding such matter, we shall consider not only the plaintiff's evidence previously discussed, but also the evidence presented by the defendants after the defendants' motion for instructed verdict was overruled at the conclusion of the plaintiff's case. At this juncture we shall review the pertinent testimony introduced by the defendants after the motion was overruled.

Norton Baker was the attorney who prepared Mrs. Hamill's will and codicils. He testified that he had known and represented Mrs. Hamill from 1962 until her death. During this period of time he saw her several times a year, drew wills, trusts, oil and gas leases and had discussed various business matters with her, including investments, the bond market and interest rates, and observed that she was quite knowledgeable concerning her property and the objects of her bounty. In short, she advised him as to how she wanted her will drawn and demonstrated that she knew exactly the nature and extent of her property and to whom she wanted the property to go. He further stated that she knew and understood the natural objects of her bounty, and knew what she was doing with respect to the disposition of her property by the will. Also, she requested that he, Norton Baker, and Ben Robinson serve as executors under her will.

Ben Robinson, who was named as co-executor under Mrs. Hamill's will, testified that he was a licensed CPA and that he prepared her 1963 income taxes and did various types of accounting work for her until her death. He saw her on the average of once per month and testified from his time records that he saw Mrs. Hamill on the specific dates of the execution of the will and codicils. Further, he testified that she had a keen mind, understood tax and business matters, the extent

and nature of her property, as well as the natural objects of her bounty, and that she was capable of forming and carrying out her own judgment.

Harold Mowry, the husband of Mrs. Hamill's older daughter, testified that he had talked with Mrs. Hamill approximately three or four times a week since 1956, and had leased farm land from her subsequent to 1966. She handled her business affairs and had excellent business ability. She made oil and gas leases, various investments and substantially increased the value of the estate after her husband's death. He observed no difference in her capabilities around February, 1968, from prior times and that she knew the objects of her bounty.

Another witness presented by the defendants was Glenna Aiken, a legal secretary who worked for the law firm of Smith and Baker (Norton Baker) in Lubbock, Texas, from about August, 1967, to April, 1968. She was acquainted with Mrs. Hamill during the time she worked for Norton Baker and talked with her fifteen or twenty times during this period. She was one of the witnesses to the codicils of Mrs. Hamill's will. She testified that from her observation of Mrs. Hamill during this period of time, Mrs. Hamill was of sound mind, knew what she was doing, and that she had specifically heard Mrs. Hamill discuss the amount and extent of her property.

Dr. Paul Stewart testified that, as a general medical practitioner, he had seen and treated Mrs. Hamill on various occasions subsequent to August 4, 1967, and saw her twenty-five to thirty times thereafter prior to her death. He testified that he saw Mrs. Hamill on the specific dates of January 2, 1968, February 27, 1968, March 8, 1968, March 18, 1968 and March 29, 1968. He had some training in matters relating to mental illnesses, and during all of the period of his treatment of Mrs. Hamill he observed no evidence of mental illness, confusion or disorientation indicating men-

tal problems. He testified that she knew the natural objects of her bounty in February and March, 1968, and had the mental ability to understand the nature of her transactions and make and carry out a reasonable judgment regarding her property and the objects of her bounty. He further testified that her mind was not affected by any of the illnesses for which he had treated her.

Thad McDonald, president of Levelland State Bank, testified that he had been her banker for several years prior to her death, knew her to be a prudent business woman, and that she understood the nature and extent of her property and the objects of her bounty. He saw her once or twice a month and had discussed various business affairs with her.

The last of defendants' witnesses, L. E. Mitchell, Jr., testified that he had been in the grain elevator and fertilizer business in Levelland since 1957, and had known Mrs. Hamill since about 1955. He had various business dealings with her through the years, and testified that she was very capable in handling her business affairs. He further testified that in his opinion she had the mental ability to execute various types of instruments and had sufficient mental ability and memory to recall the objects of her bounty.

■ It is our opinion that none of the testimony of the defendants' witnesses, elicited either on direct or cross examination, served to strengthen the plaintiff's case upon which she had the burden of proof. Such testimony did not support the plaintiff's contentions of testamentary incapacity or raise a fact issue of testamentary incapacity. Thus, at the conclusion of all the evidence, including all of that presented by the plaintiff, which has been previously considered, and that presented by the defendant, it is our opinion that the plaintiff had not raised a fact issue on the matter of testamentary incapacity for submission to the jury, and that the granting of the defendants' motion

for instructed verdict would have been proper. We recognize the rule that, in determining whether a motion for instructed verdict should be granted, the court of civil appeals is bound to view the testimony and inferences in the light most favorable to the appellant and against the instructed verdict, and that instructed verdict is proper only when there is no evidence, or where the evidence is of such a character as to be of no probative force or value. Mundy v. Stiles, 257 S.W.2d 750 (Tex. Civ.App.—Waco 1953, writ ref'd n. r. e.). Even if the testimony of Baker, Robinson and Mowry is inadmissible and should not be considered, as contended by the appellant, the effect or impact of their evidence on the jury is of no consequence since it did not serve to support the plaintiff's case with respect to her contentions of testamentary incapacity of the testatrix or raise any fact issue to be submitted to the jury regarding testamentary incapacity. Further, in considering all of the remaining testimony, both plaintiff's and defendants', we find no evidence of probative force to support the plaintiff's case or raise a fact issue of testamentary incapacity. In determining whether an instructed verdict is proper, we must consider whether the evidence submitted from any source to prove the vital fact of lack of testamentary capacity (the plaintiff's burden) creates no more than a mere surmise or suspicion of its existence, and thus, in legal effect, is no evidence, Seideneck v. Cal Bayreuther Associates, supra; Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059 (1898), or if there is any evidence of such probative force as to create a fact issue. See Mundy v. Stiles, supra.

In the case of Jowers v. Smith, supra, a case factually similar in many essential respects to the case at bar, the court stated:

" . . . Under the record and rules of law governing the facts here presented, it must be presumed that the will was properly executed and that the testator had mental capacity until the contrary is established by a preponderance of the evidence. There is no showing in the record here that the testator did not know what he was doing with the property he owned when he executed the will. He named and provided for each of his surviving children, his surviving wife and his surviving grandson in the will. He described his property in the will. He must have known what he was doing with his property and must have known the objects of his bounty. Such being true, appellants have failed, as a matter of law, to raise an issue of testamentary incapacity by evidence of probative force."

We believe that the rules above stated are applicable here.

At the conclusion of all the testimony, the defendants reurged and resubmitted their motion for instructed verdict which was preserved on appeal. In the light of the foregoing authorities, we have concluded that there was no evidence presented, or certainly no evidence to raise more than a surmise or suspicion, either before plaintiff rested or subsequently elicited from any of the defendants' witnesses, which would support the plaintiff's contentions of testamentary capacity or raise a fact issue to be submitted to the jury. Thus, it is our opinion that the court should have granted the defendants' motion for instructed verdict at the conclusion of all the evidence.

It is our further opinion that the holding that the defendants' motion for instructed verdict should have been granted at the conclusion of all the evidence disposes of the basic question in this appeal; therefore, a detailed discussion is unwarranted with respect to the appellant's remaining points of error complaining of the admission of the testimony of witnesses Baker and Robinson concerning their transactions with the deceased and the testimony of Mowry as the husband of a devisee. Even if the appellant's contentions regarding the alleged inadmissibility of the testimony of Baker and Robinson should be

sustained on the grounds that, although they are not parties of record in their capacities as named executors, they might properly be regarded as "parties" having some substantial interest in the matter litigated since they had not renounced their right to become executors under the will and expected to act as such in the event the will and codicils are admitted to probate, we think that the admission of such testimony was harmless. A careful examination of the record discloses that there was other evidence bearing on the basic issues of Mrs. Hamill's business ability, her general knowledge, mental capability, and testamentary capacity, including the testimony of the doctor, the legal secretary, the banker and other business associates, to amply support the conclusion that she knew and understood the nature and extent of her property, the natural objects of her bounty, and the disposition made of her property by the execution of the will and codicils. Thus, the testimony complained of would be cumulative in effect. In the absence of a showing that there was a lack of other evidence of probative force to support the jury findings of testamentary capacity and that such alleged inadmissible testimony probably resulted in an improper or unjust verdict, the error, if any, in admitting the same was harmless and thus would not constitute reversible error. For the same reasons, the admission of the testimony of Mowry, the husband of a devisee, would be regarded as harmless. Further, he is not a party to this suit in any capacity, and his interest is not such as to come within the ambit of the prohibitions under Article 3716. See Mitchell v. Deane, 10 S.W.2d 717 (Tex.Comm'n App. 1928, jdgmt aff'd), and Lehmann v. Krahl, 155 Tex. 270, 285 S.W.2d 179 (1955).

The court overruled the defendants' motion for instructed verdict at the conclusion of all the evidence and submitted the issues of testamentary capacity to the jury, and even if it should be determined that fact issues were raised for jury determination,

it is our opinion, and we would so hold, that the record contains sufficient evidence of probative force to support the jury's findings of testamentary capacity.

For the reasons above stated the judgment of the trial court is affirmed. The appellant's motion for rehearing and the amendment thereto are overruled.

## ON MOTION FOR REHEARING

⬛ Included as a part of appellant's motion for rehearing is a motion for additional findings of fact. The Supreme Court discussed the duty of the court of civil appeals with respect to making findings of fact in cases on appeal in the case of City of Beaumont v. Graham, 441 S.W. 2d 829 (Tex.1969). The court held, among other matters, that where the additional findings of fact requested by an appellant in the court of civil appeals were evidentiary in nature and involved original findings, the court of civil appeals had no jurisdiction to make such additional findings on appeal. In this connection, the court stated: "Indeed, as this court pointed out in Wisdom v. Smith, 146 Tex. 420, 209 S. W.2d 164 (1948), courts of civil appeals have no jurisdiction to make original findings of fact in cases on appeal; they can only 'unfind' facts." In the case of Construction and General Labor Union v. Stephenson, 148 Tex. 434, 225 S.W.2d 958 (1950), the court held that where the court of civil appeals sufficiently stated its conclusions on the controlling issues of fact and where many of the requested findings were evidentiary and argumentative, the court of civil appeals properly refused to make the requested findings. See also, Moore v. Copeland, 478 S.W.2d 573 (Tex. Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.). In Employers' Casualty Co. v. Roland, 1 S.W.2d 568 (Tex.Comm'n App. 1928), it was held that assignments complaining of the refusal of the court of civil appeals to make findings of fact were properly overruled where the facts sought to be found were not controlling, but mere-

ly evidentiary and would not have been inconsistent with the judgment of the court of civil appeals.

We have examined the appellant's motion and have determined that the findings requested by the appellant are evidentiary and argumentative in nature and involve original findings which we have no jurisdiction to make. Further, some of the requested findings are undisputed matters, while others are not controlling with respect to the basic issues of testamentary capacity. Under these circumstances, the appellant's motion for additional findings is denied.

In view of the various matters raised in appellant's motion for rehearing, we have again reviewed the evidence submitted in this case, wherein the plaintiff has the burden of proving the vital fact of testamentary incapacity. After considering such evidence in the light most favorable to the position of the plaintiff, as required, we adhere to our former opinion that there was no evidence of the required probative force or value to support the plaintiff's contentions or raise a fact issue of testamentary incapacity.

In the event it can be said that fact issues as to testamentary incapacity were raised, we still are of the opinion that there was adequate evidentiary support for the jury's findings that Mrs. Hamill had testamentary capacity on the occasions in question, i. e., that she knew and understood the nature and extent of her property, the natural objects of her bounty, and the disposition made of her property by the execution of the will and codicils. We, of course, are cognizant that the testimony which plaintiff contends was inadmissable supports the jury's findings; nevertheless, in our original consideration and in our review occasioned by the motion for rehearing to determine whether the testimony, even if inadmissible, was likely to have caused the jury to render a different verdict, we appraised the strength and weight of the other evidence before the jury to determine the question of reversibility. Our appraisal was and is that such testimony was cumulative of matters otherwise established by ample competent evidence previously set out. Carter v. Carter, 391 S.W.2d 546 (Tex.Civ.App.—Dallas 1965, no writ; and that the record as a whole does not show that the admission of the testimony, even were we to hold it inadmissable, resulted in an improper verdict. Otto v. Otto, 438 S.W.2d 587 (Tex.Civ. App.—San Antonio 1969, no writ).

After considering all matters set out in appellant's motion for rehearing, we adhere to our former disposition of the case. Accordingly, appellant's motion for rehearing is overruled.