NO. 07-09-0241-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

SEPTEMBER 1, 2010

_____

KELLY KANTON LABAJ AND THIRD COAST AUTO
GROUP, LP, APPELLANTS

v.

DEEANN VANHOUTEN, APPELLEE

_____

FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY;

NO. D-1-GN-08-000492; HONORABLE SCOTT JENKINS, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellants, Kelly Kanton Labaj and Third Coast Auto Group, LP (collectively "TCAG"), appeal from a judgment rendered in favor of Appellee, DeeAnn VanHouten, following a jury trial of her dog bite case. VanHouten was awarded $50,000 in actual damages. TCAG asserts the trial court erred in failing to grant its motions for: (1) summary judgment; (2) directed verdict; and (3) a new trial because there was no

evidence that the dog in question had dangerous propensities that were abnormal for an animal of her class.  We affirm.

## Background

In May 2007, TCAG operated a used car lot in Travis County, Texas.  VanHouten was a TCAG employee working at the lot as a title clerk.  On May 30, VanHouten left the front office to check her car for licensing papers.[1]  When she reached the garage, she asked Jose Salguero where her car was located.  He indicated her car was in the back lot. VanHouten was unaware there was a dog on the back lot.

As VanHouten was walking through the back lot, she saw a Ford Mustang in the "make ready" area[2] that she thought she might like to purchase.  As she was looking in the Mustang, she heard a movement or rustle and observed the roof of a doghouse through the car's rear window. Believing a dog might be nearby, she decided to walk away.  At that moment, a dog came from behind the Mustang and startled VanHouten. She froze and the dog lunged, attached its jaws to her leg, began shaking her, and pulled her to the ground.  When her screams were heard in the repair garage, Jose approached and removed the dog.  A portion of VanHouten's leg muscle had been detached from her leg during the attack.  An ambulance was called and VanHouten was taken to a local hospital.

---

[1] Her vehicle was on the lot for the purpose of being repaired.  VanHouten was responsible for any repair costs.

[2] The "make ready" area of the car lot was where TCAG serviced and cleaned used cars in anticipation of offering them for sale.

VanHouten subsequently filed suit alleging in her amended petition three theories of liability against TCAG:  (1) strict liability, (2) negligent handling, and (3) negligence. Under the first theory, she alleged TCAG was liable for her injuries because they knew or should have known of the dog's dangerous and vicious propensities.  Her second theory alleged TCAG failed to exercise reasonable care to prevent the dog from injuring her.  And, her third theory alleged TCAG failed to keep the premises safe, properly contain the dog, or warn others of its presence.

Following a two day trial, the trial court submitted the following Questions to the jury, in pertinent part, and received the following answers:

**QUESTION NO. 2.**

At the time of the occurrence in question, did [the dog] have dangerous propensities abnormal to its class?

**ANSWER:**  No.

**QUESTION NO. 5.**

On the occasion in question, was VanHouten an invitee on that part of [TCAG's] premises under consideration?

**ANSWER:**  Yes.

**QUESTION NO. 6.**

Did the negligence, if any, of those named below proximately cause the occurrence in question?

**ANSWER:**  Yes [as to Labaj and TCAG].

In accord with the jury's verdict, the trial court issued a judgment awarding $50,000 in actual damages to VanHouten.  Thereafter, TCAG filed a motion for new trial asserting VanHouten's evidence was legally insufficient because she failed to

3

show the dog had dangerous propensities. TCAG's motion was denied and this appeal followed.

### Issues One and Two:  Summary Judgment and Directed Verdict

TCAG appeals the trial court's denial of its motions for summary judgment and directed verdict asserting VanHouten failed to prove as a matter of law that the dog in question had dangerous propensities that were abnormal for an animal of her class.

Neither ruling by the trial court is reviewable on appeal. Texas law is settled that the denial of a motion for summary judgment may not be challenged on appeal from a final judgment following trial. *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex. 1966). *See Moore v. Jet Stream Investments*, LTD., 261 S.W.3d 412, 427 (Tex.App.--Texarkana 2008, pet. denied) (collected cases cited therein).[3] Texas law is also settled that a defendant who moves for a directed verdict after the plaintiff rests, but thereafter elects not to stand on his motion for directed verdict and proceeds with the presentation of evidence, waives any complaint regarding the denial of that motion. *Natural Gas Clearinghouse v. Midgard Energy Co.*, 113 S.W.3d 400, 412 (Tex.App.--Amarillo 2003, pet. denied) (citing *Cliffs Drilling Co. v. Burrows*, 930 S.W.2d 709, 712 (Tex.App.--Houston [1st Dist.] 1996, no writ)). *See Vermillion Constr. Co. v. Fidelity & Deposit Co. of Maryland*, 526 S.W.2d 744, 748 (Tex.App.--Corpus Christi 1975, no writ) (collected cases cited therein). Accordingly, TCAG's first two issues are overruled.

---

[3]TCAG argues no exception to the general rule that a denial of summary judgment is interlocutory and unappealable. *See, e.g., Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 5 (Tex. 1999); *Novak v. Stevens*, 596 S.W.2d 848, 849 (Tex. 1980).

**Issue Three**

TCAG asserts the trial court erred in denying its motion for a new trial for the single reason that the jury did not find that the dog in question had dangerous propensities which were abnormal for an animal of her class.  A motion for a new trial is a proper predicate for preserving a legal sufficiency challenge.  *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985).  *See Allison v. Acel Parks*, 763 S.W.2d 606, 607 (Tex.App.--Fort Worth 1989, pet. denied).

**Standard of review**

In reviewing rulings on motions for directed verdicts, motions for new trial based on no-evidence and judgments notwithstanding the verdict, appellate courts apply the no-evidence standard.  *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005); *McGuire, Craddock, Strother & Hale, P.C. v. Transcontinental Realty*, 251 S.W.3d 890, 895 (Tex.App.–Dallas 2008, pet. denied); *Arroyo Shrimp Farm, Inc. v. Hung Shrimp Farm, Inc.,* 927 S.W.2d 146, 149 (Tex.App.--Corpus Christi 1996, no pet.).  The court considers the evidence in a light most favorable to the challenged finding, indulges every reasonable inference to support it; *Wilson*, 168 S.W.3d at 822, credits favorable evidence if reasonable jurors would and disregards contrary evidence unless reasonable jurors would not.  *Id.* at 827.

A challenge to the legal sufficiency of evidence will be sustained when, among other things, the evidence offered to establish a vital fact does not exceed a scintilla.  *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006).  Evidence does not exceed a scintilla if it is "so weak as to do no more than create a mere surmise or

suspicion" that the fact exists. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)(quoting *Kindred v. Con/Chem, Inc.* 650 S.W.2d 61, 63 (Tex. 1983)). And, so long as the evidence falls within the zone of reasonable disagreement, we may not invade the fact-finding role of jurors, who alone determine the credibility of witnesses, the weight to be given their testimony, and whether to accept or reject all or part of their testimony. *Wilson*, 168 S.W.3d at 822.

### Negligent Handling

TCAG asserts VanHouten could only establish her negligence action if she proved TCAG knew or should have known the dog had dangerous propensities that were abnormal to her class. Because the jury answered "No" to Question 2 and determined that the dog did not have dangerous propensities abnormal to her class, TCAG asserts VanHouten's evidence was legally insufficient to establish TCAG was negligent in handling or keeping the dog.

If an animal is vicious or has aggressive tendencies and the owner has knowledge of that propensity, the owner can be subject to liability under the law of strict liability. *Marshall v. Rannes*, 511 S.W.2d 255, 258 (Tex. 1974); *Belger v. Sweeney*, 836 S.W.2d 752, 754 (Tex.App.--Houston [1st Dist.] 1992, writ denied). However, if an animal is non-vicious, the owner may still be subject to liability for negligent handling of the animal. *Marshall*, 511 S.W.2d at 258. Therefore, generally, "[t]he gist of an action to recover for injury caused by a domestic animal, resulting from something other than known propensities, is usually negligence of the owner or keeper in the keeping or handling of the animal." *Koepke v. Martinez*, 84 S.W.3d 393, 396 (Tex.App.--Corpus

6

Christi 2002, pet. denied) (citing *Dunnings v. Castro*, 881 S.W.2d 559, 562 (Tex.App.--Houston [1st Dist.] 1994, pet. denied)).

The Restatement (Second) of Torts addresses the liability for harm caused by domestic animals that are not abnormally dangerous and provides that "one who possesses . . . a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm caused by the animal if, but only if, (a) he intentionally causes the animal to do harm, or (b) he is negligent in failing to prevent harm."  Restatement (Second) of Torts § 518 (1977).  Comment (h) to section 518 states:

> One who keeps a domestic animal that possesses only those dangerous propensities that are normal to its class is required to know its normal habits and tendencies.  He is therefore required to realize that even ordinary gentle animals are likely to be dangerous under particular circumstances and to exercise reasonable care to prevent foreseeable harm . . . .  So, too, the keeper of an ordinary bitch or cat is required to know that while caring for her puppies or kittens she is likely to attack other animals and human beings.

*Id.* § 518 cmt. (h).

Thus, an owner of a dog may be liable for injuries caused by the dog even if the animal is not vicious, if the plaintiff can prove the owner's negligent handling or keeping of the animal caused the injury. *Dunnings*, 881 S.W.2d at 562-63.  To recover on such a claim, a plaintiff must prove:  (1) the defendant was the owner or possessor of the animal; (2) the defendant owed a duty to exercise reasonable care to prevent the animal from injuring others; (3) the defendant breached that duty; and (4) the defendant's breach proximately caused the plaintiff's injury.  *Thompson v. Curtis*, 127 S.W.3d 446,

7

451 (Tex.App.--Dallas 2004, no pet.) (citing *Allen ex rel. B.A. v. Albin*, 97 S.W.3d 655, 660 (Tex.App.--Waco 2002, no pet.)).

Whether a duty exists is a threshold question of law that we decide from the facts surrounding the case. *Allen*, 97 S.W.3d at 665 (citing *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999)). In cases where a person is injured on the premises of another, including dog bite cases, the duty owed by the landowner depends on the status of the person injured on the premises. *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex. 1975). *See Dunnings*, 881 S.W.2d at 563; *Gill v. Rosas*, 821 S.W.2d 689, 691 (Tex.App.--El Paso 1991, no pet.); *Searcy v. Brown*, 607 S.W.2d 937, 941 (Tex.App.-- Houston [1st Dist.] 1980, no writ); *Arrington Funeral Home v. Taylor*, 474 S.W.2d 299, 302 (Tex.Civ.App.--Eastland 1971, writ ref'd n.r.e.). "If the plaintiff [is] on the premises as an invitee, it [is] the defendant's duty to exercise ordinary care to keep his premises in a reasonably safe condition, so that the plaintiff would not be injured; on the other hand, if the plaintiff [is] on the premises merely as a licensee, the only duty that the defendant owe[s] him [is] not to injure him willfully, wantonly or through gross negligence." *Searcy,* 607 S.W.2d at 941. Here, TCAG does not contest the jury's determination that VanHouten was an invitee.[4] Accordingly, TCAG owed a duty to VanHouten to exercise reasonable care to keep its premises in a reasonably safe

---

[4]The jury charge defined an "invitee" as follows:

> [A] person who is on the premises at the express or implied invitation of the possessor of the premises and who has entered thereon either as a member of the public for a purpose for which the premises are held open to the public or for a purpose connected with the business of the possessor that does or may result in their mutual economic benefit.

8

condition so as not to injure her. *See Dunnings,* 881 S.W.2d at 563; *Gill*, 821 S.W.2d at 689; *Rosas*, 518 S.W.2d at 536.

Whether a duty exists, in dog bite cases, also depends to some degree on proof of whether the risk of injury from a dog bite is foreseeable, *i.e.*, the dog owner's actual or constructive knowledge of the danger presented by his dog. *Gill*, 821 S.W.2d at 691; *see Dunnings*, 881 S.W.2d at 564. A party should not be held responsible for the consequences of an act that cannot be reasonably foreseen; *Dawkins*, 375 S.W.2d at 344, and there is no duty to warn of danger when no danger is anticipated. *Watkins v. Beiker*, 579 S.W.2d 519, 522 (Tex.Civ.App.--Tyler 1979, no writ).

Where the owner or keeper of a dog owes someone a duty of reasonable care to prevent the animal from harming them, the law is clear that liability may attach even though the injured person does not establish the dog had dangerous propensities abnormal to its class. *Bushnell v. Mott*, 254 S.W.3d 451, 452 (Tex. 2008); *Marshall,* 511 S.W.2d at 259. *See Allen*, 97 S.W.3d at 660; *Dunnings*, 881 S.W.2d at 562-63. Thus, a plaintiff satisfies his burden of proof by establishing that the owner had actual or constructive notice of facts that would put an ordinary person on notice that the animal could cause harm and the owner was negligent in preventing such harm. *Hill v. Palms*, 237 S.W.2d 455, 456 (Tex.App.--Amarillo 1950, no writ.). *See Dunnings,* 881 S.W.2d at 563-64; *Dawkins v. Van Winkle,* 375 S.W.2d 341, 344 (Tex.Civ.App.--Waco), *writ dism'd w.o.j.*, 377 S.W.2d 830 (Tex. 1964). Whether the owner had actual or constructive notice is a question of fact for the jury. *See Pate v. Yeager*, 552 S.W.2d 513, 516 (Tex.Civ.App.--Corpus Christi 1977, writ ref'd n.r.e.).

9

Steven Quiroz, TCAG's manager, testified at trial that the dog had been on the lot for several weeks before the incident.[5] The dog was on the lot as a guard dog and was intended to deter anyone from vandalizing or stealing parts from cars parked on its lot. Quiroz testified the dog was chained to a fence nine to twelve hours a day and let loose in the lot at night. He described the dog as an aggressive security guard who he "just didn't want to have an encounter with . . . period." He also described the dog as a pit bull, a "more aggressive breed than [an] average dog." "It was a big dog, he would not have gone up to the dog specifically to pet it." "His main thought was during the day that thing--the dog better be, you know, put up because, obviously, we have clientele and we have workers there, so that was my main concern."

Quiroz went on to testify he had no knowledge of the dog's history but the dog had "no known biting [or] dangerous propensities" prior to the incident. That said, when asked if he forgot something at the lot whether he would return at night, Quiroz answered he "would not go into the office if the pit bull were free," but would "wait until the next morning." He also testified that, approximately a week and a half before the incident, the pit bull had puppies and "generally a dog that has just had puppies is going to be in the frame of mind to protect those puppies." He also admitted he "didn't take any precautions" to protect employees or customers from the dog, and that "anybody could have come through the gate" into the area where the dog was kept chained during the day. There were no signs warning of the presence of a guard dog on the lot. Gina

[5]TCAG does not dispute the ownership of the dog or that it was a "keeper" of that dog. With TCAG's permission, the actual owner of the dog, Jose Salguero, a mechanic at TCAG, kept the dog on the lot as a guard dog. Jose chained the dog up in the morning when he arrived and let the dog loose at night when he left work.

Salguero, Jose's wife, testified that, prior to the incident, the dog had escaped from TCAG's lot and was hit by a car. The dog suffered a cracked hip in two places and a bladder injury but was recuperating on its own.[6]

Under these circumstances, we cannot say that the evidence is "so weak as to do no more than create a mere surmise or suspicion" that Quiroz had actual or constructive notice of facts that would lead a reasonable person to the conclusion that the dog could cause harm, or react with aggression, if an employee or customer unwittingly came upon the dog at the lot. Quiroz characterized the dog as "big" and "aggressive." He also described the dog's breed as "more aggressive" than the average dog. Although he was concerned for his own safety around the dog as well as the safety of his clientele and employees, he testified he took no precautions to protect them. Furthermore, the dog was injured and caring for its pups.

Quiroz's testimony establishes that, without adequate precautions, it was foreseeable that the dog might harm the public and/or TCAG's employees.[7] Accordingly, we find TCAG owed a duty to see that invitees were adequately warned of the dog's presence and the dog was in no position to attack such persons. *See Arrington Funeral Home*, 474 S.W.2d at 302. *See also Dunnings,* 881 S.W.2d at 563-64. Having reviewed the entire record, we also find there is more than a scintilla of

---

[6]A veterinarian recommended surgery and placing pins in the dog's hip, however, the treatment was not performed.

[7]Foreseeability is satisfied by showing the actor as a person of ordinary intelligence should have anticipated the danger to others by his negligent act. *Searcy*, 607 S.W.2d at 942. It is not required that the actor anticipate just how the injury will grow out of the particular situation. *Id.* (citing *Missouri Pacific Railroad Co. v. American Statesman*, 552 S.W.2d 99, 103 (Tex. 1977)).

evidence to support the jury's determination that TCAG breached its duty and proximately caused VanHouten's injuries. Accordingly, we hold VanHouten's evidence of TCAG's negligence was legally sufficient.

### "Where it was supposed to be"

TCAG also contends that because VanHouten did not prove the dog had dangerous propensities that were abnormal for that class of animal, it cannot be held liable for the incident because the dog "was where it was supposed to be."

The "where it is supposed to be" rule is simply a restatement of the test for strict liability.[8] This rule was first stated in *Lewis v. Great Southwest Corporation*, 473 S.W.2d 228, 231 (Tex.Civ.App.--Fort Worth 1971, writ ref'd n.r.e.) in that portion of the opinion analyzing the plaintiff's strict liability claim as follows:

> With regard to an animal not naturally vicious, the general rule, in the absence of a statute, is that the owner of the animal is not answerable for injuries done by it when in a place where it had a right to be, unless, it was, in fact and to the owner's knowledge, vicious or dangerous. If being therefore of a peaceable disposition, it suddenly and unexpectedly, while in the charge of its owner or his servants, inflicts injury on another, neither, if at that time due care was exercised, is answerable. 4 Am.Jur.2d, Animals, § 86, p. 332.

*Id.* at 231.

Further, the cases cited by TCAG are inapposite. In these cases, a pet dog either bit someone on the homeowner's premises; *Searcy*, 607 S.W.2d at 939, 941

---

[8]Suits for damages caused by known vicious animals are governed by principles of strict liability, predicated upon a showing of the vicious or aggressive tendencies of the animal and the owner's knowledge of that propensity. *Marshall,* 511 S.W.2d at 258; *Dunnings,* 881 S.W.2d at 562.

(licensee on the owner's property); *Rodriquez v. Haddock*, No. 02-01-0386-CV, 2003 Tex. App. LEXIS 2940, at *2 (Tex.App.--Fort Worth April 3, 2003, no pet.) (not designated for publication) (guest bitten in owner's home); *Petry v. Gasca*, No. A14-93-00433-CV, 1994 Tex. App. LEXIS 821, at *1-2 (Tex.App.--Houston [14th Dist.] April 14, 1994, no writ.) (not designated for publication) (guest bitten in owner's home), or in a closed store without invitation and contrary to instructions to wait in the car. *Jones v. Gill*, No. 02-03-0298-CV, 2005 Tex. App. LEXIS 1726, at *2-3 (Tex.App.--Fort Worth March 3, 2005, no pet.).

In *Searcy*, the court discussed the injured person's status while on the owner's property and determined the injured person was a licensee; *Searcy*, 607 S.W.2d at 941-42, while, in *Jones*, the court noted the person was in the store while it was closed and uninvited. *Jones*, 2005 Tex. App. LEXIS 1726, at *17. Because the persons bitten in *Searcy* and *Jones* were licensees, the defendant had no common law duty to either warn the licensee or make the conditions safe and the plaintiff's standard of proof was much higher---willful, wanton, or gross negligent conduct; *Searcy*, 607 S.W.2d at 941, than simple negligence. *Marshall,* 511 S.W.2d at 259.

Here, the dog in question was not being subjected to treatment normally accorded a domestic dog or family pet in his owner's home or on his property. On the contrary, the dog was an aggressive, guard dog whose purpose was to protect TCAG's commercial property from vandalism and theft. The dog was chained for hours a day, exposed to the elements, seeking shelter under vehicles, injured and taking care of her young. Animals subjected to this type of treatment may well become frightened, overly

13

protective and dangerous. As the dog's owner or keeper, TCAG is charged with knowledge of these facts. *See* Restatement (Second) of Torts § 518 cmt. (h) (1977). Further, unlike the cases cited by TCAG, VanHouten was an invitee to whom TCAG owed a duty to warn and to keep the premises in a reasonably, safe condition. Accordingly, TCAG's third issue is overruled.

## Conclusion

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice