886 S.W.2d 330 (1994)
HARRIS COUNTY, Texas, Appellant,
v.
Robyn Lynn Wilson DEMNY, Appellee.
No. 01-93-00947-CV.
Court of Appeals of Texas, Houston (1st Dist.).
August 18, 1994.
Rehearing Overruled September 22, 1994.
*332 Mike Driscoll and Jay S. Siskind, Houston, for appellant.
Richard L. LaGarde, Houston, for appellee.
Before COHEN, O'CONNOR and HEDGES, JJ.

OPINION
COHEN, Justice.
Harris County appeals from a jury verdict in favor of appellee, Robyn Lynn Wilson Demny, in her negligence suit. We affirm.
On March 24, 1989, appellee was a passenger in a car headed south on Airline Drive. She suffered severe injuries when the car struck a car leaving the Pin Oak Mobile Home Park at Airline Drive.
Before the accident, Harris County had begun a reconstruction project to widen Airline Drive by replacing a bridge adjacent to the Pin Oak Mobile Home Park. After the bridge was completed, the manager of Pin Oak notified the County that its headwall blocked the view of drivers leaving the mobile home park. In January 1989, the County modified the headwall by cutting part of it down. This accident occurred two months later.
Appellee alleged the County negligently failed to make safe or warn of the dangerous condition at that intersection. The jury found the County negligent, assessed it 30 percent of the causation, and the court entered judgment accordingly.
In its first three points of error, the County complains of errors in the jury charge.[1]
The trial judge has wide discretion to provide explanatory instructions and definitions necessary to enable the jury to render a verdict. K-Mart Corp. Store No. 7441 v. Trotti, 677 S.W.2d 632, 636 (Tex.App. Houston [1st Dist.] 1984, writ ref'd n.r.e.). We consider only whether the trial judge acted arbitrarily and do not substitute our judgment for the trial judge's. Id. Jury charge error is reversible only if it was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Tex.R.App.P. 81(b)(1).
The judge submitted the following general definition of negligence:
"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.
This definition does not include the elements of premises liability, the theory under which appellee sued the County. The County contends it was entitled to the following definition:
Negligence by Harris County ... is the failure to use ordinary care to make reasonably safe or adequately warn of a dangerous condition which Harris County ... created or had actual knowledge of.
The County's liability, however, was not premised on the general definition of negligence; that definition was included for other defendants in the case. Instead, the County's liability was premised on the following jury question:
With respect to the condition of the intersection, Defendant Harris County was negligent if
a. the condition posed an unreasonable risk of harm, and

*333 b. Harris County had actual knowledge of the danger, and
c. Robyn Demny did not have actual knowledge of the danger, and
d. Harris County failed to adequately warn Robyn Demny of the condition or make the condition reasonably safe.
Answer "Yes" or "No" for each of the following: Harris County, Fidelia Munoz, Belinda Kay Demny, Tamborello Engineering, Inc., Pin Oak Mobile Home Park, Howard, Needles, Tammen & Bergendoff.
This question contains the elements of premises liability. Therefore, the judge did not abuse his discretion by refusing the County's proposed definition.
The County also contends it was entitled to the following definition of a dangerous condition:
You are instructed that the term "dangerous condition [sic] as used in this charge means a condition that poses an unreasonable risk of harm to a user of the roadway in question. You are also instructed that a condition that is open and obvious is not a "dangerous condition."
Similar language was contained in the question on the County's negligence. In order to find the County negligent, the jury was required to find that the condition "posed an unreasonable risk of harm." Therefore, it cannot be said that the judge abused his discretion by refusing to submit the County's proposed definition.
Finally, the County contends the judge improperly instructed the jury on its duty to warn of or make safe a dangerous condition. As stated above, in order to find the County negligent, the jury was required to find that:
c. Robyn Demny [appellee] did not have actual knowledge of the danger, and
d. Harris County failed to adequately warn Robyn Demny [appellee] of the condition or make the condition reasonably safe.
(Emphasis added). The County contends the proper question was not whether appellee had actual knowledge and was not adequately warned, but instead whether "the user of the roadway" had actual knowledge and was not adequately warned. The County contends that only the car's driver was a "user of the roadway," and that appellee was not a "user of the roadway" because she was a passenger, not the driver.
The County cites no case holding that a passenger is not a user. Moreover, no evidence showed that the driver either knew of the danger or had been warned of it by the County. We hold that a passenger like appellee is a "user of the roadway." Therefore, the judge did not abuse his discretion by refusing to submit the County's proposed instruction.
We overrule the County's first three points of error.
In its fourth and fifth points of error, the County contends there was no evidence either that there was a dangerous condition or that the County knew there was a dangerous condition.
In reviewing the denial of an instructed verdict, we consider all the evidence in the light most favorable to the nonmovant, and disregard all evidence to the contrary. Collora v. Navarro, 574 S.W.2d 65, 68 (Tex. 1978). Every reasonable inference is resolved in favor of the nonmovant. Id. If there is any conflicting evidence of probative value on any theory of recovery, the issue must go to the jury. White v. Southwestern Bell Tel. Co., 651 S.W.2d 260, 262 (Tex.1982).

1. Evidence of a Dangerous Condition
Appellee presented expert testimony from Stuart Hinton, Irvin Carl Mattick, and Jarvis Michie on the issue of whether the intersection was a dangerous condition.
Stuart Hinton, an accident reconstruction expert, testified as follows:
Q: If you had to characterize this intersection, what would you call it?
A: It's extrahazardous, as far as I'm concerned. I mean, it'sit's just a matter of time as far as accidents occurring there.
. . . .
Q: Do you think this intersection is dangerous?
A: In my opinion, yes, sir.

*334 Q: Do you think a person who's just occasionally driving by on the highway on Airline Drive would appreciate the danger of that intersection if they didn't go into the mobile home park and try to exit it?
A: No, sir, not really.
Irvin Carl Mattick, a project engineer for Howard, Needles, Tammen & Bergendoff, testified as follows:
Q: In connection with your work in designing the Airline Road project, as it's been referred to, did you have discussions with Harris County concerning the entrance onto Airline Road from the Pin Oak Mobile Home Park?
A: Yes, I did.
Q: What did those discussions concern?
A: Well, it was apparent that the driveway presented a potential hazard on the approach from the bridge over Halls Bayou from the south, and I discussed the possibility of relocating the driveway to farther south.
Finally, Jarvis Michie, a civil engineer, testified as follows:
Q: In your opinion, as a person with twenty-three years of experience in highway safety and highway design, is that a safe or dangerous intersection?
A: That is a dangerous intersection.
This testimony was sufficient to defeat the County's motion for a directed verdict.
2. Evidence of County's Knowledge
Patricia Sue Porter, the manager of the Pin Oak Mobile Home Park, testified that she made numerous complaints to Tom Langford, Harris County's engineering coordinator for the project on Airline Drive. The County investigated the complaints, discovered a sight distance problem, and attempted to correct it. On the day of the accident, Porter again called Langford to complain about the bridge. Langford told Porter that the County was in the process of doing something about the railing. This evidence of the County's knowledge is sufficient to defeat its motion for a directed verdict.
We overrule the County's fourth and fifth points of error.
In its last three points of error, the County contends the judge erred by denying its motion notwithstanding the verdict, its motion to disregard jury findings, and its motion for new trial because no evidence or insufficient evidence supports the jury's finding that the County had actual knowledge of the dangerous condition.
1. No evidence
As stated under points of error four and five, evidence supports the jury's finding that the County had actual knowledge of the dangerous condition at the intersection. Thus, we overrule the no evidence point.
2. Insufficient evidence
We now considerin addition to the evidence considered under the no evidence challengethat evidence which is contrary to the judgment. See Plas-Tex, Inc. v. United States Steel Corp., 772 S.W.2d 442, 445 (Tex.1989). We will set aside the verdict only if the evidence is so weak that the verdict was clearly wrong and manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.1986).
The County admits it knew of a dangerous condition from Porter's complaints. Langford testified that corrective measures were taken approximately two months prior to the accident. After taking corrective measures, the County received no further complaints before this accident. The County contends this is conclusive evidence it did not have actual knowledge that a dangerous condition continued to exist. This evidence, however, was contradicted by evidence the County did have knowledge and was in the process of fixing the railing. Porter testified Langford stated on the day of the accident that the County was in the process of doing something about the railing and that the matter "in the courts." The evidence is sufficient to support the jury's finding that the County had actual knowledge of a dangerous condition.
We overrule the County's last three points of error.
The judgment is affirmed.
O'CONNOR, J., dissents.
*335 O'CONNOR, Justice, dissenting.
I dissent.
This case involved an automobile accident that occurred on March 24, 1989, at the intersection of the private road exit from Pin Oak Mobile Home Park onto the county roadway known as Airline Drive in Houston, Texas. One of the automobiles involved in the accident was driven by Belinda Demny Ruyle, who was heading south on Airline Drive, and the other was driven by Fidelia Munoz, who was leaving the trailer park. Plaintiff, Robyn Demny, was a passenger in the back seat of the Ruyle's vehicle. Plaintiff is the sister-in-law of Ruyle.
Before the accident, Harris County spent three years upgrading and widening Airline Drive. The project involved replacing the two-lane road and ditches with a five-lane road with concrete curbs, gutters, and storm sewers. The upgrade also included replacing the bridge over Halls Bayou. Halls Bayou is adjacent to the Pin Oak Mobile Home Park. In later 1988, after the new bridge was in place, the manager of the mobile home park complained to Harris County about the headwall located at the south end of the bridge, adjacent to the mobile home driveway. She said the headwall blocked the view of drivers leaving the mobile home park onto Airline Drive. Harris County responded by correcting the situation in January 1989, by modifying the headwall by cutting it down. Harris County claims that after the modification of the headwall, there were no more complaints. Harris County introduced evidence at trial that the construction of the bridge and roadway, with respect to sight distance requirements, was in compliance with the construction standards for the State of Texas, which required a minimum of 200 feet. The plaintiff contends there were complaints after the modification. The plaintiff introduced evidence by an expert that the condition was extra hazardous.
The plaintiff testified that immediately before impact, she saw Munoz's car and screamed "Belinda [Ruyle]." The plaintiff did not know if Ruyle actually applied her brakes before the impact. Ruyle testified there was only one lane open for traffic on Airline because it was still under construction. She said she was driving between 30 and 35 m.p.h., which was the speed limit. She testified she did not see anyone on the driveway of the trailer park, that the green car (Munoz's) suddenly appeared in front of her. When asked if her view was blocked by the railing, she said, "[I]t could have been." Ruyle, who lived close by, admitted she had driven past the trailer park many times.
The officer who arrived at the scene and investigated the accident testified the cause of the accident was Munoz's failure to yield the right of way, and the view from the driveway was not obstructed. He said cars can leave the trailer park safely. The county called a consultant who testified that after the accident he measured the sight distance on Airline by placing cones at intervals of 100 feet down Airline. He testified that sitting in the driveway, as Munoz had been just before the accident, he could see down Airline beyond the cone located at 400 feet. He testified that neither the bridge nor the sight distance played any role in the accident.

Error in the Charge
I agree with the County that it was entitled to the following definition:
Negligence by Harris County ... is the failure to use ordinary care to make reasonably safe or adequately warn of a dangerous condition which Harris County ... created or had actual knowledge of.
The majority states that the County's liability was not premised on the general definition of negligence. I agree with the majority that it should not have been, but I think on this submission it was. The jury question regarding the County's liability did not dispel the notion that the definition of negligence in the instruction governed the County's liability.
I also agree with the County that it was entitled to the definition of dangerous condition. In the instructions, the trial court included the following:
You are instructed that Harris County cannot be found negligent for design defects or for the failure to include safety features in the design of a roadway even *336 though the design may be a "dangerous condition."
The County asked the trial court to include a definition of "dangerous condition." The County wanted a definition that explained that a "dangerous condition" is a condition that poses an unreasonable risk of harm to a user of the roadway. The issue whether the condition was dangerous was one of the most disputed issues in this trial. The definition should have been included.
Finally, I agree with the County that a question should have been submitted regarding the actual knowledge of the user of the highway, not the plaintiff who was sitting in the back seat of the automobile. The plaintiff actually saw the Munoz's car on the road before Ruyle, the driver. Ruyle testified that she did not have time to apply the brakes before impact.
The charge, which is reproduced in the majority's opinion, is from 3 State Bar of Texas, Texas Pattern Jury Charges PJC 66.05 (1990). The suggested charge in section 66.05 has four elements, whether: (1) the condition posed an unreasonable risk of harm; (2) the County had actual knowledge of the danger; (3) the plaintiff had actual knowledge of the danger; and (4) if the County failed to adequately warn the plaintiff or make the condition reasonably safe.
This case is somewhat different than the usual licensee case because the plaintiff was not driving, she was merely a passenger. Yet even as the passenger she was more alert to the conditions on the roadway than the driver; she saw the green car before Ruyle.
As submitted in this case, with the passenger's name listed as the plaintiff, the charge only had two elements, whether: (1) the condition posed an unreasonable risk of harm; (2) the County had actual knowledge of the danger. By using the plaintiff's name in the third and fourth element (instead of using the phrase requested by the County, the "user"), the jury could assume the plaintiff, who was a passenger in the back seat of the car, had no actual knowledge of the danger until she screamed at Ruyle to stop (element 3), and that the County did not warn her in the back seat of the car about the condition of the roadway (element 4). By focusing on the conduct of the plaintiff instead of Ruyle, in relationship to the County's negligence, the question unfairly tilted the question against the County.
The majority overrules this point, adding that the record contains no evidence that either the driver or the plaintiff knew about the dangerous condition. The majority overlooks certain presumptions we use in such cases. First, we impute to a licensee (in this case, the driver, not the back seat passenger) the knowledge of those conditions perceptible to her, or the existence of which can be inferred from the facts within her present or past knowledge. See Lower Neches Valley Auth. v. Murphy, 536 S.W.2d 561, 564 (Tex. 1976); Weaver v. KFC Management, Inc., 750 S.W.2d 24, 26-27 (Tex.App.Dallas 1988, writ denied) (if the hazard was perceptible, the licensor does not have the duty to warn). Second, we charge the licensee (the driver) with knowledge of all dangers that should have been discoverable by the exercise of reasonable care. See Hadaway v. Lone Star Gas Co., 355 S.W.2d 590, 592 (Tex.App. Fort Worth 1962, orig. proceeding). With these two assumptions in place, I believe the evidence raised the issue regarding the licensee's knowledge. If the jury had been charged to examine the knowledge and conduct of the driver, not the plaintiff (passenger), the jury might have found that she knew that the private driveway intersected with Airline Drive and that it posed a risk.
I would reverse for a new trial.
NOTES
[1] The County also argues it is immune from liability under Tex.Civ.Prac. & Rem.Code Ann. § 101.056 (Vernon 1986), which provides immunity for discretionary acts of a governmental entity. This immunity, however, does not apply to claims arising from the absence of a warning device if the government knew of the problem and failed to act within a reasonable time. TEX. CIV.PRAC. & REM. CODE ANN. § 101.060 (Vernon 1986); See Zambory v. City of Dallas, 838 S.W.2d 580, 583 (Tex.App.San Antonio 1992, writ denied) (holding the Tort Claims Act allows claims arising from absence of any traffic or road sign, or warning device if the government knew of the problem and failed to act within a reasonable time).