**WEBWORLD MARKETING GROUP, L.L.C., Appellant,**

v.

**Tommie THOMAS, Appellee.**

**No. 01–04–00749–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

March 22, 2007.

Rehearing Overruled April 23, 2007.

Gus E. Pappas, Dabney & Pappas, Houston, for Appellant.

Sandra D. Hachem, Sr. Asst. Co. Atty., Houston, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and HANKS.

## OPINION ON REHEARING

GEORGE C. HANKS, JR., Justice.

The Court, after duly considering Tommie Thomas's motion for rehearing, has withdrawn its opinion and judgment of November 9, 2006 and issued the following in its stead. Thomas's motion for rehearing is hereby granted.

In this declaratory judgment action, a jury found that Tommie Thomas ("the Sheriff") did not act in good faith when he arbitrarily denied Webworld Marketing Group, L.L.C.'s application for a Sexually Oriented Business ("SOB") permit. The trial court granted the Sheriff's motion for judgment notwithstanding the verdict ("JNOV") and denied all relief Webworld sought against the Sheriff. In its sole point of error, Webworld contends that the trial court erred in granting the JNOV. We reverse and remand.

## Background

In March of 2000, Steve Fisher, managing director of Woodbridge Investment Company, purchased some property on which he wanted to establish a gentleman's club. Fisher, who had experience with SOBs, was aware of the importance of finding land that was not within 1500 feet of any residential use because of the requirements to get a permit for an SOB. An SOB must apply for a permit. *See* TEX. LOC. GOV'T CODE ANN. § 243.007 (Vernon 2005); HARRIS COUNTY, TX., ORDINANCE 83–1812 (August 6, 1996).

In December of 2000, Webworld was formed to lease the land from Fisher and run the SOB. Within 1500 feet of the proposed SOB, there was a parrot shop owned by Joe Melvin and his wife. The Melvins had purchased this land in 1996 and applied for a permit to build first the shop on the ground level and then a garage apartment upstairs where they would live. They planned to do the construction slowly as funds became available to avoid going into debt. The Melvins stayed upstairs periodically, beginning in 1998 after the framing was completed, while they continued working on the building. The Melvins testified they stayed there, on average, two or three nights a month during this time. The Melvins also applied for a homestead exemption; however, because they already owned another home and could only have one homestead, the exemption was denied. Due to lack of funding, little progress was made on the build-

ing construction in 1999. However, the Melvins still lived at the shop occasionally throughout 1999. In March 2000, after he decided to purchase the land for the SOB, Fisher noticed the parrot shop and drove by it almost daily. It was his impression that no one was living there.

In March 2001, Fisher climbed a ladder in the middle of the day to investigate the Melvins' upstairs property and took some pictures through the window. He could see all the way to the back wall and noticed that it was largely unfinished and appeared to be storage for the shop downstairs. He acknowledged that there was some sort of construction underway.

After his investigation, Fisher called Darla Gideon of Webworld and advised her that there was nothing in the parrot shop and that she should apply for the SOB permit. Gideon testified that she drove by the parrot shop "many" times between January 2001 and March 2001 and saw "no vehicles parked out front. No activity. The upstairs had no blinds or drapes on it." There was a sign on the door, which clearly stated that the store would be closed during that time for approximately three months, as it was every year while the Melvins were on vacation.

On March 19, 2001, Webworld filed for the SOB permit and certified that there was no residence within 1500 feet of the SOB site. In accordance with the requirements for an SOB permit, Webworld sent letters to all property owners within the 1500 foot radius, advising them of its intention to establish the SOB. The property owners then had the opportunity to write a letter to the Sheriff with any objections to the SOB's permit being issued. After receipt of this notice, the Melvins wrote a letter to the Sheriff explaining that their "residence" was above the parrot shop and within the 1500–foot radius.

On May 15, 2001, Webworld received a letter from Major Juan Jorge of the Sheriff's office denying its SOB permit on the ground that it violated section VIII(e)(4) of the Ordinance because (1) the SOB was within 1500 feet of a dwelling, (2) Webworld had knowingly made a misleading statement by providing an incorrect address of the SOB, and (3) Webworld had knowingly made a misleading statement because "the proposed building which was to be a cabaret will not fit in the area of your lot area...." Gideon testified that, after receiving Major Jorge's letter, she made several telephone calls to Reliant Houston Lighting & Power ("HL & P"), and she was told that, for the property in question, HL & P had assigned "5, 6, 7 addresses. Some half addresses to light poles and things like that." Gideon was able to obtain the new address for the planned building on the Woodbridge property. Gideon explained that, when the application was filed, the land was "raw. Trees, mud, dirt, animals." There was no building in place.

On June 19, 2001, Webworld's attorney wrote a letter acknowledging that it had discovered that the address for the SOB was wrong on the application, and he advised the Sheriff of the correct address. Attached to the letter from Webworld's lawyer were at least two documents. One was a map that Webworld had created of the property in question with the correct addresses in place. "Becky" from HL & P signed the map and stated that she agreed that the addresses were correct. The second was a letter from an engineering firm stating that it had designed the building and the building would fit on the pad site.[1]

1. The Ordinance does not require that the building fit within the pad site.

Gideon never heard back from the Sheriff. At all times relevant to Webworld's application for an SOB permit, the Sheriff had actual knowledge of the building site's location, and, at all times and with both addresses, the parrot shop was considered to be within 1500 feet of the building.[2]

Webworld sought (1) the trial court's declaration that Webworld met all required criteria for the issuance of an SOB permit and, correspondingly, (2) the trial court's order requiring the Sheriff to issue the SOB permit to Webworld.

The case went to trial, and the jury was asked four questions in the charge. They were as follows:

### Question Number 1

Was the location of Webworld's proposed enterprise located a minimum of one thousand five hundred (1,500) feet from any *dwelling* in existence at that location at least thirty (30) days prior to Webworld's application dated March 19, 2001?

A *"dwelling"* is a house, duplex, apartment, townhome, condominium, mobile home or any other building used as a *"residence"*.

The term *"residence"* means, personal presence at some place of abode with no present intention of definite and early removal and with purpose to remain for undetermined period, not infrequently, but not necessarily combined with design to stay permanently.

A person may have more than one *residence.*

Answer "Yes" or "No":

Answer: [Yes]

### Question Number 2

Did Webworld knowingly make a misleading statement of material fact by omitting or falsifying information in its application dated March 19, 2001 for a Sexually Oriented Business Permit?

Answer "Yes" or "No":

Answer: [No]

### Question Number 3

Did the Sheriff arbitrarily deny Webworld's March 19, 2001 application for an SOB permit?

You are instructed that the Sheriff is required to state its reasons for the denial of the SOB permit in writing. You are further instructed that in this lawsuit, the Sheriff is not prohibited from presenting evidence of additional or alternative facts that support denial of the SOB permit.

Answer "Yes" or "No":

Answer: [Yes]

### Question Number 4

Did the Sheriff act in good faith in denying Webworld's March 19, 2001 application for an SOB permit?

You are instructed that the Sheriff is required to state its reasons for the denial of the SOB permit in writing. You are further instructed that in this lawsuit, the Sheriff is not prohibited from presenting evidence of additional or alternative facts that support denial of the SOB permit.

Answer "Yes" or "No":

Answer: [No]

After the jury answered all four questions in favor of Webworld, the Sheriff filed a

---

2. Major Jorge testified that having the incorrect address on the application would not be a basis for denying a permit if (1) the location was known to the Sheriff's department, (2) the department knew which structures existed within 1500 feet of the proposed building site, and (3) the address was corrected in time.

motion for JNOV in which he alleged that there was legally insufficient evidence to support the jury's finding on question number 1 because there was "no evidence that the *planned use* of the property was not as a part-time residence." (Emphasis added.) He asserted that the photographs of the parrot shop "showed a completed structure that was *capable of being used* as a residence." (Emphasis added.) The Sheriff also complained that there was legally insufficient evidence to support the jury's finding on questions number 3 and number 4 because there was no evidence that the Sheriff arbitrarily denied the SOB permit or acted in bad faith "in light of the fact that the Melvins had indicated in 1996 that they would use the property as a residence." The Sheriff further asserted that "these questions were not issues of fact which would be appropriate for the jury to decide." The motion for JNOV did not address the jury's finding in jury question number 2 that Webworld did not knowingly make a misleading statement of material fact by omitting or falsifying information in its application dated March 19, 2001 for an SOB permit.

Without stating its reasons, the trial court granted the motion for JNOV and denied Webworld's writ of mandamus against the Sheriff. Webworld appeals this order. In its sole point of error, Webworld contends that the trial court erred in granting the Sheriff's JNOV.

### Intent

 Webworld argues that the Melvins' *intent* to create a dwelling is not an element of the Ordinance and is thus irrele-

vant to the inquiry of whether the parrot shop was a dwelling, whose use, as a residence, was in existence at least 30 days before the date of the SOB application.

We need not determine whether the intent to create is relevant because the jury was not asked to determine the significance of the Melvins' intent.[3]

### JNOV

Webworld argues that the trial court erred in granting the JNOV because there was more than a scintilla of evidence to support the jury's verdict.

### Standard of Review

 A trial court may grant a JNOV if there is no evidence to support one or more of the jury findings on issues necessary to liability. *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex.2003). To determine whether there is no evidence to support a jury verdict, we view the evidence in a light that supports the challenged finding and disregard all evidence and inferences to the contrary. *Id.* Where an issue of fact is raised, a court may not grant JNOV where facts are controverted, or such that different inferences may reasonably be drawn therefrom. *See Richardson v. Dallas Ry. & Terminal Co.*, 198 S.W.2d 475, 478 (Tex.Civ.App.-Waco 1946, no writ). It is the jury's province to reconcile conflicting or contradictory evidence of the witnesses. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988). The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Transmission Exch. Inc. v. Long*, 821 S.W.2d 265, 271 (Tex.App.-Houston [1st

---

3. The Sheriff contends that, because he objected at trial, we must measure the sufficiency of the evidence against the definitions or instructions that the jury should have applied. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex.2002). While *Wolff* does stand for the proposition that only an unobjected-to charge will be used to measure the sufficiency of the evidence, it is presumed that the objected-to charge is successfully challenged by a point of error on appeal. Here, as discussed more fully below, we overrule the Sheriff's challenge to the jury charge.

Dist.] 1991, writ denied). We may not substitute our opinion for that of the trier of fact. *Id.*

▪ If more than a scintilla of evidence supports the finding, the jury's verdict must be upheld. *Wal–Mart Stores, Inc. v. Miller,* 102 S.W.3d 706, 709 (Tex. 2003). More than a scintilla of evidence exists when the evidence enables reasonable minds to differ in their conclusions. *See Tarrant Reg'l Water Dist. v. Gragg,* 151 S.W.3d 546, 552 (Tex.2004). Conversely, evidence that creates only a mere surmise or suspicion is no more than a scintilla and is, thus, no evidence. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004). Similarly, an inference that is stacked only upon other inferences, rather than direct evidence, is not legally sufficient evidence. *See Marathon Corp. v. Pitzner,* 106 S.W.3d 724, 728 (Tex.2003).

## More than a Scintilla

Let us now review the questions submitted to the jury.

### Question Number 1

▪ Was the location of Webworld's proposed enterprise located a minimum of one thousand five hundred (1,500) feet from any *dwelling* in existence at that location at least thirty (30) days prior to Webworld's application dated March 19, 2001?

A *"dwelling"* is a house, duplex, apartment, townhome, condominium, mobile home or any other building used as a *"residence"*.

The term *"residence"* means, personal presence at some place of abode with no present intention of definite and early removal and with purpose to remain for undetermined period, not infrequently, but not necessarily combined with design to stay permanently.

A person may have more than one *residence.*

Answer: (Yes)

Gideon testified that Ron Daugherty, her registered agent, went door-to-door to look for residences within 1500 feet of the pad site. Attached to the application were photographs and descriptions of the buildings located within 1500 feet of the proposed SOB. Gideon testified that the description of the parrot shop was as follows:

> This 2–story building houses an office and related office equipment as well as an indoor retail facility for housing parrots and other exotic birds, feed, [and] related equipment. The building is currently empty as the owners and operators close for an approximate three-month period yearly from December to March. We have examined the premises. No one lives there or otherwise occupies the premises except for a few bird cages and related business items. There is no sign of any furniture, beds or any other indicia of anyone using this as a residence.

Gideon also testified that, between January 1 and March 19, 2001, she drove by the parrot shop "many" times and saw "no vehicles parked out front. No activity." The upstairs, which Gideon described as having "lots of windows," had "no blinds or drapes on it." None of the other store owners told her anything different about the parrot shop.

On cross-examination, the Sheriff's attorney asked Gideon if she had any evidence that the Melvins were not planning to build a residence on the top floor of the parrot shop as their 1996 permit reflected their intent to be. Gideon responded, "Well, there was no—there was no toilet, there was no running water, there was no electricity upstairs."

Just considering the testimony from the first witness at trial, we hold that more

than a scintilla of evidence exists to support the jury's answer to question number 1.

### Question Number 2

Did Webworld knowingly make a misleading statement of material fact by omitting or falsifying information in its application dated March 19, 2001 for a Sexually Oriented Business Permit?

■ In his motion for JNOV, the Sheriff did not contest the jury's finding on question number 2. Regardless, Gideon testified that she signed the affidavit on the original application and that she did not lie or knowingly make any misrepresentation of any material fact. Accordingly, we hold that there was more than a scintilla of evidence to support the jury's finding on question number 2.

■ On appeal, the Sheriff argues that, because Webworld originally provided the Sheriff with an inaccurate address on its application for the SOB permit, the Sheriff did not default in the performance of his legal duty. Importantly, at no time during trial or in any pleading filed by the Sheriff prior to trial did he raise such an issue for review. Accordingly, he has waived this argument.

The Sheriff contends that an opinion from this Court allows a trial court to grant a motion for JNOV on a ground not expressly asserted in the motion. *See* *McDade v. Tex. Commerce Bank*, 822 S.W.2d 713, 717 (Tex.App.-Houston [1st Dist.] 1991, writ denied). While *McDade* allows granting such a motion, the facts are easily distinguished from those before us.

In *McDade*, a retired bank officer filed suit against the bank for breach of contract, breach of fiduciary duty, negligence, and violation of the Deceptive Trade Practices Act after the bank opened a regular money market account instead of an IRA account as he had requested. *Id.* at 716. The jury returned a verdict in favor of McDade, the retired bank officer, and the bank filed a motion for JNOV. *Id.* The trial court entered a JNOV and found that, among other things, McDade's claims were barred by the statute of limitations—an argument not raised in the bank's motion for JNOV. *Id.* The jury questions, however, did address the date on which McDade should have discovered the bank's error. *Id.*

Here, the trial court did not state the basis for its decision to grant the Sheriff's motion for JNOV. In its response to the Sheriff's motion for JNOV, Webworld did not respond to the incorrect address argument because it was not raised in the Sheriff's motion for JNOV; therefore, there was nothing to *respond* to. Now, on appeal, the Sheriff, as appellee, raises this argument for the first time. Our facts are distinguishable from *McDade's*. In *McDade*, the jury answers addressed the date on which McDade should have discovered the bank's error and provided trial court with the information needed to determine whether the claim was barred by the statute of limitations. Here, the jury was not asked to comment on the significance of the incorrect address, and the trial court did not state its reasons for granting the motion for JNOV.

Furthermore, although the address written on Webworld's application for an SOB permit was incorrect, at all times relevant to this case, the Sheriff knew the actual location of the building site. Major Jorge testified that having the incorrect address on the application would not be the basis for denying a permit if (1) the location was known to the Sheriff's department, (2) it knew which structures existed within 1500 feet of the proposed building site, and (3) the address was corrected in time. All

distance measurements related to Webworld's SOB permit application were taken from the building site's correct location. There is no evidence that the incorrect address on Webworld's SOB permit application misled the Sheriff. To the contrary, the evidence at trial revealed that, as soon as it discovered that the address was incorrect, Webworld notified the Sheriff of the correct address for this "raw" land where the proposed SOB site was planned.

**Immaterial Jury Questions**

■ On appeal, the Sheriff contends that all questions submitted to the jury were immaterial and thus ripe for a JNOV because Webworld's June 19, 2001 letter to the Sheriff that indicated the corrected address for the SOB was, in fact, a separate and distinct SOB permit application. Again, the Sheriff did not present this argument to the trial court and he did not offer any proposed jury questions which treated the June 2001 letter as a separate application; therefore, the Sheriff's argument regarding the materiality of the four jury questions was waived.

We sustain Webworld's sole point of error.

### Cross–Points

The Sheriff raises the following cross-points on appeal: (1) the trial court erred in submitting jury questions 1, 3, and 4 because there was no evidence to support their submission; (2) the trial court erred in failing to grant the Sheriff's request for an instructed verdict because there was no evidence in support of Webworld's claims for relief; (3) alternatively, if there was any evidence of probative value in support of Webworld's claim, the evidence was factually insufficient to support the jury's answers to questions 1, 3, and 4; and (4) alternatively, if there was any evidence in support of Webworld's claim, the case

should be remanded because the charge was erroneous.

■ When a JNOV is granted, the appellee may bring forward by cross-point any ground, including factual sufficiency, which would have vitiated the verdict or prevented an affirmance of the judgment. TEX.R. CIV. P. 324(c); TEX.R.APP. P. 38.2(b); *Winograd v. Clear Lake City Water Auth.*, 811 S.W.2d 147, 159 (Tex.App.-Houston [1st Dist.] 1991, writ denied). The purpose of these rules is to require a final disposition of the case by the appellate court, where a JNOV is erroneously rendered by the trial court, on the basis of the record before it, and to order a remand only as to questions that require the taking of additional evidence. *Jackson v. Ewton*, 411 S.W.2d 715, 718 (Tex.1967).

### No Evidence

In cross-point one, the Sheriff contends that the trial court erred in submitting jury questions 1, 3, and 4, because there was no evidence to support their submission. Having already determined that more than a scintilla of evidence existed to support the jury's findings, we overrule cross-point one.

### Instructed Verdict

■ In cross-point two, the Sheriff argues that the trial court erred in failing to grant his request for an instructed verdict, because there was no evidence in support of Webworld's claims for relief.

■ A denial of a motion for directed verdict may be reversed where the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law and there is no evidence to the contrary. *See McCarley v. Hopkins*, 687 S.W.2d 510, 512 (Tex.App.-Houston [1st Dist.] 1985, no writ). In reviewing the denial of an instructed verdict, we consider all the evidence in the light most favorable

to the nonmovant and disregard all evidence to the contrary. *Harris County v. Demny*, 886 S.W.2d 330, 333 (Tex. App.-Houston [1st Dist.] 1994, writ denied). Every reasonable inference is resolved in favor of the nonmovant. *Id.* If there is any conflicting evidence of probative value on any theory of recovery, the issue must go to the jury. *Cliffs Drilling Co. v. Burrows*, 930 S.W.2d 709, 712 (Tex.App.-Houston [1st Dist.] 1996, no writ).

The Sheriff makes no additional argument in his cross-point, but refers us to his argument found in response to Webworld's point of error complaining of the granting of the JNOV. In that argument, the Sheriff set out the County Regulations: (1) an SOB is prohibited in the County unless a permit is issued in accordance with the regulations; (2) an application must include an address, and permits are only valid for an address provided in the application; (3) there is a 1500–feet distance prohibition from dwelling; and (4) applicants must cooperate with the sheriff in investigations to confirm statements in the application.

The Sheriff contends that Webworld admitted that the application and amended application that it submitted did not contain the address for its enterprise. He further contends that Webworld's June 2001 letter in which it provided the correct address, did not constitute a new application because there was no "certification" of distance. The Sheriff also argues that, because "it is undisputed that the Melvins had a structure within 1500 feet of [Webworld's] proposed location that was being built under a 1996 permit for a building which indicated in its application would include a residence," Webworld did not comply with the statutory distance requirements.

There is no question that the Sheriff knew the physical location of the proposed SOB. At no time during the course of the application process did Webworld change its physical location—its proximity to the Melvins did not change. As the Sheriff noted, "the purpose intended by the legislature for giving the county power to adopt these regulations was to provide the county with a means of regulating the 'locations' of sexually oriented businesses." *Lindsay v. Papageorgiou*, 751 S.W.2d 544, 548 (Tex.App.-Houston [1st Dist.] 1988, writ denied). The "location" was not affected by the incorrect address provided by HL & P, placed on Webworld's application, and corrected by Webworld when discovered. With respect to the distance requirements, we, again, refer to Gideon's testimony that, after her inspector examined the property, he noted that "[t]here is no sign of any furniture, beds or any other indicia of anyone using this as a residence."

After resolving every reasonable inference in favor of Webworld, we hold that the trial court did not err in denying the Sheriff's motion for instructed verdict. *See Demny*, 886 S.W.2d at 333. We overrule cross-point two.

**Factually Insufficient Evidence**

In cross-point three, the Sheriff asserts that the evidence was factually insufficient to support the jury's answers to questions 1, 3, and 4.[4]

In reviewing a factual-sufficiency point, we consider all the evidence supporting and contradicting the finding. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). We set aside the verdict only if the finding is so contrary to the overwhelming weight of the

4. The prevailing party on a JNOV need not file a motion for new trial to preserve a factual sufficiency challenge. *See* Tex.R. Civ. P. 324(c).

evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986).

### Question Number 1

■ Was the location of Webworld's proposed enterprise located a minimum of one thousand five hundred (1,500) feet from any *dwelling* in existence at that location at least thirty (30) days prior to Webworld's application dated March 19, 2001?

A *"dwelling"* is a house, duplex, apartment, townhome, condominium, mobile home or any other building used as a *"residence".*

The term *"residence"* means, personal presence at some place of abode with no present intention of definite and early removal and with purpose to remain for undetermined period, not infrequently, but not necessarily combined with design to stay permanently.

A person may have more than one *residence.*

Answer "Yes" or "No":

Answer: [Yes]

The Sheriff argues that "Webworld's evidence that the Melvins' [sic] did not have a residence in use within 1500 feet of Webworld at least 30 days before the date of Webworld's application was so weak as to be factually insufficient." He contends that is was undisputed that the Melvins would stay overnight at the parrot shop from time to time over several years. Again, reviewing Gideon's testimony, alone, creates a fact issue as to the classification of the parrot shop as a residence. Gideon testified that her inspector provided the following description of the parrot shop:

This 2–story building houses an office and related office equipment as well as an indoor retail facility for housing parrots and other exotic birds, feed, [and] related equipment. The building is currently empty as the owners and operators close for an approximate three-month period yearly from December to March. We have examined the premises. No one lives there or otherwise occupies the premises except for a few bird cages and related business items. There is no sign of any furniture, beds or any other indicia of anyone using this as a residence.

Furthermore, as the Sheriff pointed out, it was Daugherty's impression driving by in late 2000 and early 2001 that no one lived there.

Fisher also testified that, in March 2001, he and his son climbed a ladder and looked in the second floor windows. From the window, he could see corner to corner of the second floor, and he saw "bare stud walls, no insulation, no Sheetrock, no electrical or plumbing, no furniture, stored bird cages." Fisher concluded that "[i]t looked exactly like what it was, a storage place above a commercial building." The Sheriff questioned if there was an easier way for Fisher to determine the status of the premises.

Q. Would it have been a lot easier instead of climbing on that wobbly ladder just to check on the Internet under HCAD [Harris County Appraisal District] records and see what they were planning on doing with the second floor?

A. I did check the Internet records on HCAD. It showed F–1 commercial property. I did a visual inspection the same as I asked everybody else to do to make sure that there were no residence [sic]. This was not a residence. This was an empty 4–wall unfinished storage space.

We hold that the jury's finding to question 1 was not so contrary to the overwhelming

weight of the evidence as to be clearly wrong and unjust. *See Cain,* 709 S.W.2d at 176.

### Question Number 3

Did the Sheriff arbitrarily deny Webworld's March 19, 2001 application for an SOB permit?

You are instructed that the Sheriff is required to state its reasons for the denial of the SOB permit in writing. You are further instructed that in this lawsuit, the Sheriff is not prohibited from presenting evidence of additional or alternative facts that support denial of the SOB permit.

Answer "Yes" or "No":

Answer: [Yes]

### Question Number 4

██ Did the Sheriff act in good faith in denying Webworld's March 19, 2001 application for an SOB permit?

You are instructed that the Sheriff is required to state its reasons for the denial of the SOB permit in writing. You are further instructed that in this lawsuit, the Sheriff is not prohibited from presenting evidence of additional or alternative facts that support denial of the SOB permit.

Answer "Yes" or "No":

Answer: [No]

The Sheriff contends that "the evidence that [he] acted arbitrarily or in bad faith when [he] denied Webworld's application of March 19, 2001 is so weak as to be manifestly unjust." In support of his argument, the Sheriff simply states that (1) because he received a letter from the Melvins noting that they live within 1500 feet of the proposed SOB and (2) because the address on the application was incorrect, the evidence is insufficient to support the jury's findings.

Major Juan Jorge, bureau commander of the detective bureau in the Sheriff's office, testified that he is the one who sent the letter denying the permit. Webworld's attorney questioned him at length regarding the application process, the investigation that his office conducts, and the acceptance or denial of the permit. With respect to the incorrect address on the application, Jorge testified that if the incorrect address was just a mistake, that would be no reason to deny an application. The actual address is "a minor issue." The most important thing is knowing exactly where the structure will be built so that the 1500—foot boundary can be determined. Jorge acknowledged that, before Webworld's application was denied, the Sheriff knew the physical location. He further testified that the incorrect address issue can be easily resolved, and that would not be the basis for denying an application.

Major Jorge was then questioned about the classification of the parrot shop. He testified that he did not, personally, inspect the shop. He conceded that any inspection that was done would not have been initiated until after the application was filed on March 19, 2001, despite the fact that the ordinance only applies "to property uses in existence at that location at least thirty (30) days prior to the date of application." Jorge testified that what the Melvins did to the structure after the application date was irrelevant. He explained that Brennan, his inspector, would have to have had information that, before March 19th, the Melvins were living in the parrot shop.

Melvin submitted an affidavit wherein he testified that he and his wife moved in to the parrot shop in "early March 2001, although there were a few times in February when we stayed overnight." Also in March 2001, Fisher climbed a ladder and

looked in the second floor window and saw "bare stud walls, no insulation, no Sheetrock, no electrical or plumbing, no furniture, stored bird cages." Importantly, the ordinance applied to property uses in existence at that location at least 30 days prior to March 19, 2001—the date Webworld filed its application.

The jury was free to consider Jorge's admission that the incorrect address would not be a proper basis for denying a permit, and the jury was able to resolve the question of fact whether there was actually anyone "dwelling" within 1500 feet of the SOB at least 30 days before the application in light of Fisher's testimony that the property was rated a commercial property and his description that "[i]t looked exactly like what it was, a storage place above a commercial building." The jury resolved the question in favor of Webworld. Therefore, its finding that the Sheriff acted arbitrarily and in bad faith was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain,* 709 S.W.2d at 176.

We overrule cross-point three.

**Charge Error**

■■■ In cross-point four, the Sheriff contends that the case should be remanded because the charge was erroneous. Specifically, the Sheriff complains of the trial court's overruling his objection to the charge that "defined a dwelling without explaining that a dwelling also includes an intended or planned use of the property, and incorrectly applied the law." We review the trial court's decision to overrule the Sheriff's objection for abuse of discretion. *See State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 451 (Tex.1997).

■■■ The submitted definition of "dwelling" stated as follows: "a *'dwelling'* is a house, duplex, apartment, townhome, condominium, mobile home or any other

building used as a *'residence.'*" The charge further defined "residence" as "personal presence at some place of abode with no present intention of definite and early removal and with purpose to remain for undetermined period, not infrequently, but not necessarily combined with design to stay permanently." The definition of dwelling was taken directly from section IV(o) of the Ordinance.

The Sheriff also complains that "the question given to the jury on the controlling issue concerning the Melvin's [sic] residence did not instruct the jury to consider the Melvin's [sic] intended use of their proper [sic] in determining whether it was a residence despite Thomas' objection." We disagree. In fact, the definition of residence includes a statement regarding "personal presence at some place of abode with no present *intention* of definite and early removal." (Emphasis added.)

Accordingly, we hold that the Sheriff has not shown that the trial court abused its discretion in overruling his objection to the charge. We overrule cross-point four.

**Conclusion**

We reverse the trial court's judgment, and remand the case to the trial court for an entry of judgment in accordance with the jury's verdict.

Justice KEYES, dissenting.

EVELYN V. KEYES, Justice, dissenting.

I respectfully dissent. In his motion for rehearing, appellee, Tommie Thomas ("the Sheriff"), argues that we did not properly consider his cross-points in overturning the judgment notwithstanding the verdict ("JNOV") rendered in his favor and remanding the case to the trial court to enter judgment in accordance with the verdict in

favor of appellant, Webworld Marketing Group, L.L.C. ("Webworld").

I believe that we did misconstrue the Sheriff's cross-points. I also believe our opinion lowers the standard of compliance with the applicable regulations governing an application for a sexually oriented business permit ("SOBP") from strict compliance to substantial compliance and places a burden on the Sheriff to construe the regulations liberally in favor of the applicant for an SOBP, contravening the plain language of the regulations and the intent of the county in enacting them. I would grant rehearing and affirm the JNOV rendered by the trial court.

## Relevant Facts

The Sheriff argues in his cross-points and on rehearing that the trial court properly entered judgment in his favor, notwithstanding the jury verdict in favor of Webworld, and that it properly denied the mandamus sought by Webworld ordering him to issue a Class I SOB permit for 22562 Interstate I–45 North in response to its March 16, 2001 application. He argues that, as a matter of law, Webworld failed to comply with the applicable regulations for obtaining a permit and, therefore, he had no duty to issue the permit. He contends we should have considered the no-evidence complaints not on the basis of whether there was sufficient evidence to support the jury's answers to the questions in the jury charge—to which he had objected at trial—but on the basis of the proper application of the law to the facts.

The applicable regulations are "The Regulations for Sexually Oriented Businesses in the Unincorporated Area of Harris County, Texas and Application for a CLASS I Permit" adopted August 6, 1996. HARRIS COUNTY, TX., ORDINANCE 83–1812 (August 6, 1996) (hereinafter referred to as "Harris County Regulations"). A Class I sexually oriented business enterprise is "a commercial enterprise the primary business of which is the offering of a service or the selling, renting or exhibiting of devices or any other items intended to provide sexual stimulation or sexual gratification to the customer" that "conduct[s] business regularly at a specific location."

As the Sheriff points out, section VIII(a) of the Harris County Regulations requires that "[t]o obtain a Class I ... SOBP, a complete application shall be filed with the Sheriff," in the form provided by the Sheriff, whose contents are specified for a Class I SOBP in sections VIII(b) and (e). Section XII(e)(2) of the regulations states that "[t]he SOBP shall be denied upon the finding by the Sheriff of any of the following facts," including a finding that "the enterprise does not meet all the requirements of these regulations" or a finding that "[t]he applicant has knowingly made a misleading statement of a material fact by omitting or falsifying information in the application for the SOBP."

Section VIII(b)(2) requires that an applicant for a Class I SOBP provide, in relevant part:

(2) A general description of the enterprise, which shall include the address of the enterprise and the services and products which will be offered.

(i) A Class I SOBP shall be valid only for the address provided in the application.

Section VIII(e) requires that an applicant for a Class I SOBP also provide, in relevant part:

(4) A certification that the proposed enterprise will be located:

(i) a minimum of one thousand five hundred (1,500) feet from any child care facility, school, dwelling, hospital, public building, public park, or church or place of religious worship;

. . . .

 (iv) This subsection shall apply only to property uses in existence at that location at least thirty (30) days prior to the date of application.

The Sheriff pled, *inter alia,* that Webworld had knowingly made a misleading statement of material fact by providing an incorrect address for the SOBP it sought on its March 19, 2001 application and by falsely certifying that the SOB was a minimum of 1,500 feet from a dwelling, namely the residence over the Melvins' parrot shop for whose use as dwelling permits had been sought and plans developed, and where the Melvins had stayed from time to time.

The jury was asked (1) whether Webworld's proposed enterprise was located a minimum of 1,500 feet from "any dwelling in existence at that location at least (30) days prior to Webworld's application dated March 19, 3001" when "residence" was defined as "personal presence at some place of abode . . . ."; (2) whether Webworld "knowingly made a misleading statement of material fact by omitting or falsifying information" in its March 19, 2001 application for an SOB; (3) whether the Sheriff "arbitrarily" denied Webworld's March 19, 2001 application; and (4) "whether the Sheriff acted in good faith in denying Webworld's March 19, 2001 application."

The Sheriff objected that jury questions 1, 3, and 4 improperly applied the law, there was no evidence to support the submission of the questions to the jury, and the questions would lead to inconsistent answers. Additionally, the Sheriff specifically argued that question 1 was "incorrect because it doesn't explain that a dwelling also includes intended or planned use of property" and that questions 3 and 4 were not supported by the pleadings. The trial court overruled each of these objections. The Sheriff also requested an instructed verdict at the conclusion of the case, which was likewise overruled.

Finally, in his Motion for JNOV, the Sheriff urged, "[T]here is no evidence that the Sheriff arbitrarily denied Webworld's permit or acted in bad faith in light of the fact that the Melvins had indicated in 1996 that they would use the property as a residence." The trial court granted the motion for JNOV.

The Sheriff argues on appeal that the trial court properly took the case away from the jury after the verdict because, having been given an erroneous charge over counsel's objections, the jury responded with erroneous answers. The Sheriff contends he preserved error, and he urges us to apply the law the jury should have applied and the trial court ultimately did apply. I agree with the Sheriff's position.

### Preservation of Error

Texas Rule of Civil Procedure 324(c) provides:

 When judgment is rendered non obstante verdicto or notwithstanding the findings of a jury on one or more questions, the appellee may bring forward by cross-point contained in his brief filed in the Court of Appeals any ground which would have vitiated the verdict or would have prevented an affirmance of the judgment had one been rendered by the trial court in harmony with the verdict, including although not limited to the ground that one or more of the jury's findings have insufficient support in the evidence or are against the overwhelming preponderance of the evidence as a matter of fact. . . .

 The failure to bring forward by cross-points such grounds as would vitiate the verdict shall be deemed a waiver thereof. . . .

TEX.R. CIV. P. 324(c); *accord* TEX.R.APP. P. 38.2(b).

The Sheriff objected to the charge, moved for an instructed verdict, and moved for judgment notwithstanding the verdict. He then brought forth by cross-points his grounds for vitiating the verdict, namely the legal insufficiency of the evidence and the factual insufficiency of the evidence to support the jury's answers to questions 1, 3, and 4. I would hold that the Sheriff preserved his legal sufficiency issues. *See Cecil v. Smith*, 804 S.W.2d 509, 510 (Tex.1991) (legal sufficiency challenge may be preserved by objection to charge and motion for instructed verdict). Therefore, I would address the Sheriff's argument that the evidence was legally insufficient to prove that he had a duty to issue an SOB to Webworld.

## Legal Sufficiency of the Evidence to Support the Verdict

### Standard of Review

A "no evidence," or legal insufficiency, point of error is a question of law that challenges the legal sufficiency of the evidence to support a particular fact finding. *County of El Paso v. Dorado*, 180 S.W.3d 854, 862 (Tex.App.-El Paso 2006, pet. denied). Because "no evidence" points are questions of law, they are reviewed *de novo*. *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002). In conducting a legal-sufficiency review, "we must view the evidence in a light that tends to support the finding of disputed fact and disregard all evidence and inferences to the contrary." *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex.2003). However, "[t]he final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review.... [L]egal-sufficiency review in the proper light must

credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005). Thus, a no-evidence challenge will be sustained when " '(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.' " *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

### Webworld's Compliance with Applicable Regulations

On May 15, 2001, Webworld received a letter from the Sheriff denying its SOB permit because (1) the SOB was within 1,500 feet of a dwelling; (2) Webworld had knowingly made a misleading statement by providing an incorrect address for the SOB; and (3) Webworld had knowingly made a misleading statement because the proposed building would not fit in the lot area.

Webworld had to prove that it complied with all applicable regulations to prevail in the trial court on its demand that the Sheriff be ordered to issue a Class I permit for an SOB at 22562 Interstate I-45 North in response to its March 19, 2001 application. *See* Harris County Regulations §§ XII(a), (e)(2). Therefore, I would inquire whether the evidence established Webworld's compliance with the applicable Harris County Regulations cited by the Sheriff as grounds for denial of the SOBP.

### Address

Section VIII(b)(2)(I) of the county regulations provides, "A Class I SOBP shall be valid only for the address provided in the

application." It is undisputed that both Webworld's original March 16, 2001 application and its amended April 25, 2001 application certified the address for which the permit was sought as "222562 Interstate I–45 N." Subsequently, Webworld obtained an address for the enterprise, 222465 Interstate North. On June 19, 2001, Webworld wrote the Sheriff acknowledging that the address was wrong on its SOB application, and it advised the Sheriff of the new address. However, it did not file an amended application for an SOBP for 222465 Interstate I–45 North.

I would hold that Webworld failed to comply with the regulatory requirement that it list a correct address in its SOBP application and that the Sheriff had no duty to issue a permit for construction of an SOB at an admittedly incorrect address. Webworld filed no application for an SOBP listing the correct address. For this reason alone, I would sustain the JNOV. To hold otherwise, in my view, is to impose an extra-statutory—and indeed contra-statutory—burden of due diligence on the Sheriff to ascertain the correct address for which an SOBP is sought and to issue the permit if an SOB at *that* address would satisfy county regulations. I do not believe the Harris County Regulations impose such a duty on the Sheriff; I believe its plain language imposes a duty of strict compliance on the applicant for an SOBP.

*Location Within 1,500 Feet of a "Residence"*

Section VIII(e)(4) of the regulations provides that an applicant for a Class I SOBP must provide a certification that the proposed enterprise will be located "a minimum of one thousand five hundred (1,500) feet from any child care facility, school, dwelling, hospital, public building, public park, or church or place of religious worship." Section VIII(e)(4) also provides, however, that "[t]his subsection shall apply only to property uses in existence at that location at least thirty (30) days prior to the date of application." Section III(*o*) provides that a "dwelling" is "a house, duplex, apartment, townhouse, condominium, mobile home or any other building *used as a residence.*" (Emphasis added).

Webworld certified that the proposed enterprise would be located a minimum of 1,500 feet "from any child care facility, school, dwelling, hospital, public building, public park, or church or place of religious worship." Since this requirement applies only to property uses in existence at least 30 days prior to the date of application, and since the Melvins had obtained a permit to develop the space over their parrot shop for a dwelling in 1996, had used the space as a dwelling from time to time, and had commenced plans for the development of the property as a dwelling more than 30 days before Webworld applied for a SOBP, Webworld's certification that the enterprise would be located a minimum of 1,500 feet from a dwelling necessarily implied that it did not consider the Melvins' activities sufficient to constitute the "use" of the property as a dwelling.

The Sheriff argues that, because the word "use" is not defined in the regulations, the ordinary meaning of the word should be applied. *See Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex.1993). He further argues that the term "use" is broad and means to "put or bring into action or service; to employ for or apply to a given purpose." *Mount Pleasant I.S.D. v. Lindburg*, 766 S.W.2d 208, 211 (Tex.1989); *see also U.S. Steel Corp. v. Fiberglass Specialties, Inc.*, 638 S.W.2d 950, 954 (Tex.App.-Tyler 1982, no writ). Therefore, he argues that the term extends to a property owner's present activities to develop a property for a planned or intended use, including the Melvins' seeking permits and developing plans for using the space over their parrot shop as a residence. He also contends, as

he did below, that the instruction to Jury Question 1 was improper because it did not instruct the jury to consider that a dwelling includes activities undertaken pursuant to an intended or planned use of property. Webworld responds that the Melvins' *intent* to create a dwelling is not an element of the Ordinance and is thus irrelevant to the inquiry of whether the parrot shop was a dwelling whose use as a residence was in existence at least 30 days before the date of the SOB application.

I agree with the Sheriff that the prohibition against issuing a permit for an SOB within 1,500 feet of property used for certain specified purposes that are "in existence at that location at least thirty (30) days prior to the date of application" applies not only to fully realized uses of the property but also to property whose plans for an intended use are "in existence" at least 30 days prior to the date of the application for an SOB. Otherwise, as the Sheriff points out, the County could be required to issue a permit for an SOB within 1,500 feet of a school that had been in construction for two years but that was not complete 30 days prior to the date of application. However, I would hold that there must be objective proof of the intended ultimate use of the property for a purpose specified in section VIII(e)(4) of the regulations and objective proof that, at least 30 days prior to the date of the application for an SOBP, activities were underway to prepare the location for the intended ultimate use. In other words, there must be objective proof that an intended use of the property was actually "in existence" for a given purpose and that a putative intended use is not a mere pretext for denial of a SOBP. The requirement that the use be "in existence" 30 days prior to the application for the SOBP seems clearly to have been intended to preclude the use of a pretext to deny a SOBP, but there is nothing in the language or the purpose of the regulation to suggest that

the Commissioners intended that a use "in existence" must be a fully realized use, and, indeed, any such construction of the term would lead to the absurd results posited by the Sheriff.

The evidence is undisputed that the Melvins applied for a permit expressing their written intention to construct their residence and business in the building in 1996 and that they employed active means towards that intent by constructing plans for the building and by residing over the parrot shop from time to time. Webworld, not the Sheriff, had the burden of proof that the SOBP it sought complied with all regulations. I would hold that Webworld failed to bear its burden of proof that the application it sought was not within 1,500 feet of a residence and that it, therefore, failed to satisfy the requirements for obtaining the Class I SOBP it sought.

Because I would hold that Webworld failed to comply with the Harris County Regulations both by listing an incorrect address in its March 19, 2001 SOBP application and by falsely certifying that the proposed enterprise would not be located within 1,500 feet of property whose planned use as a dwelling had been in existence for at least 30 days prior to the date of the application, I would also hold that the Sheriff had no duty to issue the SOBP and, indeed, was required to deny it. *See* Harris County Regulations § XII(e)(2),(3). Therefore, I would not reach the Sheriff's third cross-point, *i.e.*, whether the proposed enterprise would fit on the property for which the permit was sought.

### Conclusion

I would affirm the judgment of the trial court.